<u>Dominic Givens v. State of Maryland</u>, No. 88, September Term, 2015

**ALLEGEDLY INCONSISTENT VERDICTS – PRESERVATION – WAIVER –** To preserve for review any issue as to allegedly inconsistent verdicts, defendant in criminal trial by jury must object to allegedly inconsistent verdicts before verdicts become final and trial court discharges jury; defendant waives issue as to allegedly inconsistent verdicts by failing to object before verdicts are final and trial court discharges jury.

Argued: May 5, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 88

September Term, 2015

_____

DOMINIC GIVENS

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A. (Retired,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.
Greene, Adkins, and Battaglia, JJ., dissent.

_____

Filed: August 22, 2016

Factually and legally inconsistent verdicts have vexed litigants and been the subject of Maryland appellate opinions in both civil cases and criminal cases for decades. One such case of significant impact is Price v. State, 405 Md. 10, 29, 949 A.2d 619, 630 (2008), in which this Court held that guilty verdicts cannot be legally inconsistent with not-guilty verdicts in the case of a trial by jury.

In Price, although this Court determined that legal inconsistency in verdicts is not permissible, this Court was not confronted with other questions concerning inconsistent verdicts, such as whether a guilty verdict can be factually inconsistent with a not-guilty verdict in a criminal case with a jury.[1] This Court has since answered that question in the affirmative. See McNeal v. State, 426 Md. 455, 462, 44 A.3d 982, 986 (2012) ("We shall hold that the Court's opinion in *Price* does not apply to jury verdicts in criminal cases that are merely inconsistent factually . . . . In doing so, we preserve the historic role of the jury as the sole fact-finder in criminal jury trials.").

---

[1] In McNeal v. State, 426 Md. 455, 458, 44 A.3d 982, 984 (2012), this Court explained the difference between legally inconsistent verdicts and factually inconsistent verdicts as follows:

> [L]egally inconsistent verdict[s are] one[s] where the jury acts contrary to the instructions of the trial [court] with regard to the proper application of the law. Verdicts where a defendant is convicted of one charge, but acquitted of another charge that is an essential element of the first charge, are inconsistent as a matter of law. Factually inconsistent verdicts are those where the charges have common facts but distinct legal elements[,] and a jury acquits a defendant of one charge, but convicts him or her on another charge. The latter verdicts are illogical, but not illegal.

(Citations and footnotes omitted).

This case presents another issue that the Court was not called upon to address in Price: namely, the manner in which a defendant in a criminal case preserves for review an issue as to allegedly inconsistent verdicts.[2]   In Price, although this issue was not before the Court, in a concurring opinion, Judge Glenn T. Harrell, Jr. provided guidance on the matter. Judge Harrell, in his concurrence in Price, and, indeed, the Court of Special Appeals in multiple cases, and the vast majority of courts in other jurisdictions that have addressed the issue, have concluded that, to preserve for review an issue as to allegedly inconsistent verdicts, a defendant in a criminal trial by jury must object to the allegedly inconsistent verdicts before the verdicts become final and the trial court discharges the jury.

For the below reasons, we agree with Judge Harrell's concurrence, the Court of Special Appeals, and the authority from other jurisdictions, and hold that, to preserve the issue of legally inconsistent verdicts for appellate review, a defendant in a criminal trial by jury must object or make known any opposition to the allegedly inconsistent verdicts before the verdicts become final and the trial court discharges the jury.

## BACKGROUND

### Charges

In an indictment dated February 24, 2012, in the Circuit Court for Prince George's

---

[2]We use the plural term "inconsistent verdicts" instead of the singular term "inconsistent verdict" because a "verdict" is a single finding by a trier of fact; in a criminal case in which there are multiple charges, the trier of fact may issue multiple verdicts, which are either guilty verdicts or not-guilty verdicts.  See Verdict, Black's Law Dictionary (10th ed. 2014) ("A jury's finding or decision on the factual issues of a case."); Guilty Verdict, Black's Law Dictionary (10th ed. 2014) ("A jury's finding that a defendant is guilty of the offense charged."); Not Guilty, Black's Law Dictionary (10th ed. 2014) ("A jury verdict acquitting the defendant[.]").

County ("the circuit court"), the State, Respondent, charged Dominic Givens ("Givens"), Petitioner, as to various victims with one count of first-degree premeditated murder, three counts of robbery with a dangerous weapon and robbery, three counts of attempted robbery with a dangerous weapon and attempted robbery, conspiracy to commit the same, and six counts of use of a firearm in the commission a crime of violence. The victims were identified as Marvin Darrell Tomlinson ("Tomlinson"), Jeramy Dobbs ("Dobbs"), Antwan Wilkins ("Antwan"), Tyrell Jones ("Jones"), Reginald Langley ("Langley"), and Jayvon Wilkins ("Jayvon").[3] According to the indictment, Givens's co-conspirators were Trevon Marquise Montgomery ("Montgomery"), Ronald Minor ("Minor"), and Dajuan Jamal Brooks ("Brooks").[4]

### State's Theory, Trial Testimony, and Stipulations

The State's theory of the case was that Givens, Montgomery, Minor, and Brooks robbed Jones, Langley, and Jayvon, and attempted to rob Tomlinson, Dobbs, and Antwan, and that Tomlinson was fatally shot during the attempted robbery. Four of the five surviving victims—Jones, Langley, Antwan, and Jayvon—testified at trial as witnesses for the State.[5]

Jones testified that, on or about November 15, 2011, he, Langley, Antwan, Jayvon, Tomlinson, and Dobbs stopped at a playground on the way to a store. A van pulled up,

---

[3]Antwan and Jayvon are brothers, and are Jones's and Langley's cousins.
[4]Givens was tried without any co-defendants.
[5]Givens called the other surviving victim, Dobbs, as a witness in support of a motion to suppress Dobbs's pretrial identification of Givens. Although the circuit court denied the motion to suppress, neither party called Dobbs as a witness at trial.

and at least four or five people, including Montgomery,[6] got out of the van. Montgomery was holding a gun. The people from the van told the victims to "get down" and said: "You know what time it is."[7] As the victims lay on the ground, the robbers used the gun to hit Tomlinson in the head multiple times. Meanwhile, Montgomery took Jones's jacket and money, Jayvon's jacket and shoes, Antwan's jacket, and Langley's money. Before any of the robbers could take anything from Tomlinson or Dobbs, Tomlinson got up and "rushed" toward the gun, which was in Montgomery's hand. Tomlinson told the other victims to run. Jones, Langley, Antwan, and Jayvon fled and climbed over a nearby wall. As he climbed over the wall, Jones heard gunshots. Jones testified that he did not recognize anyone in the courtroom as one of the robbers. During his testimony, Jones did not mention Givens.

Langley testified that, on November 15, 2011, he, Jones, Antwan, Jayvon, and Tomlinson stopped at a playground on the way home from a store. A van pulled up, and four or five people, including Montgomery and Minor,[8] got out of the van. Montgomery was holding a gun. The people from the van said "You know what time it is" and "Lay

---

[6]Jones, Langley, Antwan, and Jayvon identified Montgomery as "Trevon Martin" and/or "Trey Black."

[7]The phrase "You know what time it is" can be used to announce a robbery. <u>See</u> Mindy Bernhardt & Volkan Topalli, "The Situational Dynamics of Street Crime: Property versus Confrontational Crime," in <u>The Wiley Handbook on the Psychology of Violence</u> 191 (Carlos A. Cuevas & Callie Marie Rennison eds., 1st ed. 2016) ("The proverbial make or break moment of the robbery occurs when the offender 'announces' that a robbery is to take place, that the robber is committed to seeing the offense carried out to its end, and that the victim knows [that] there is no alternative but to comply. This may be accomplished by simply showing the gun to the victim or by literally announcing the commencement of the offense ('This is a robbery, don't make it a murder' or 'You know what time it is').").

[8]Both Langley and Jayvon identified Minor as "Ronimo."

everything down." As the victims lay on the ground, the robbers patted the victims' pockets. One of the robbers took money from Langley. The robbers used the gun to hit Langley and Tomlinson. The gun fell to ground, and Tomlinson told the other victims to run. Jones, Langley, Antwan, and Jayvon fled and climbed over a nearby wall. As he climbed over the wall, Langley heard two gunshots. Langley testified that he did not recognize anyone in the courtroom as one of the robbers. During his testimony, Langley did not mention Givens.

Antwan testified that, on November 15, 2011, he, Jones, Langley, Jayvon, and Tomlinson stopped at a playground on the way to a store. Another group of people, including Montgomery, appeared; one of them was holding a gun, and one of them told the victims to get down. Montgomery took Jones's jacket and Jayvon's jacket and shoes, and checked Antwan's pockets, which were empty. Tomlinson got up and began "tussling" with the robber who was holding a gun, which fell to the ground. Antwan fled and climbed over a nearby wall. As he fled, Antwan heard gunshots. While testifying, Antwan was not asked whether he recognized anyone in the courtroom as one of the robbers.

Jayvon testified that, on November 15, 2011, he, Jones, Langley, Antwan, Tomlinson, and Dobbs stopped at a playground on the way home from a store. A minivan pulled up, and four people, including Givens, Montgomery, and Minor, got out of the minivan. Montgomery was holding a gun, and said "Y'all know what time it is" and "Y'all get on the ground." As the victims lay on the ground, the robbers began searching the victims. Givens took Jayvon's phone and money. Other robbers took Jayvon's jacket and shoes. The robbers took two other jackets from the other victims, and hit Tomlinson in the

- 5 -

head with the gun twice. Tomlinson "barged" toward the robber with the gun, which fell to the ground. Tomlinson told the other victims to run, and "a scuffle for the gun" ensued. Jayvon fled and climbed over a nearby wall. As he climbed over the wall, Jayvon heard gunshots.

As a witness for the State, Corey Young ("Young"), Givens's cousin, testified[9] that, on November 15, 2011, Young's car broke down, and he texted Givens to ask for help. Givens, Montgomery, and Minor arrived in Givens's gray minivan. The four people pushed Young's car to his grandmother's house. Afterward, the four people entered the minivan, which Givens drove around. Givens later asked Young to drive to pick up "Mouse,"[10] and Young complied. Young then drove the minivan to Minor's house, and the five people got out of the minivan. Minor entered his house, came back outside, and got into the minivan's driver's seat. The other four people entered the minivan, which Minor drove to a spot near a playground. Givens, Montgomery, and Mouse got out of the minivan. At some point, Minor said: "Man, they're taking too long." Minor got out of the minivan, and a fight broke out between Minor and a man who was holding a gun. Givens grabbed the gun and shot the man twice. Givens, Montgomery, Minor, and Mouse got back into the minivan, which Young drove away. While Young was driving, Givens,

---

[9]Young and the State had entered into an agreement under which Young would testify against Givens, and the State would not charge Young in connection with the events about which Young testified.

[10]Neither Young nor any other witness identified "Mouse" by any other name. Given that Young separately identified Givens, Montgomery, and Minor, and that Brooks is the only other co-conspirator whom the indictment names, it appears that Brooks was "Mouse."

Montgomery, and Mouse told Minor: "The robbery was over with. Why did you have to take it out of [Givens]'s hand?"

At trial, the prosecutor informed the circuit court that the parties had stipulated that, on November 15, 2011, members of the Prince George's County Police Department responded to 2122 County Road in District Heights, Maryland, where Tomlinson was suffering from multiple gunshot wounds. Tomlinson was transported to Prince George's County Hospital, where he was pronounced dead.

**Verdicts**

On March 14, 2013, the circuit court instructed the jury; the parties made closing arguments; and, at 11:15 a.m., the jury began deliberating. At 1:40 p.m.—*i.e.*, within two-and-a-half hours—the jury indicated that it had reached verdicts; however, the transcript reveals that the jury received lunch before being called into the courtroom to announce the verdicts.[11] At 3:05 p.m., the jury entered the courtroom to render the verdict.

In response to questions from the courtroom clerk, the jury's foreperson announced that the jury found Givens guilty of first-degree felony murder of Tomlinson, and conspiracy to commit robbery with a dangerous weapon and conspiracy to commit robbery of each of the six victims. The jury's foreperson announced that the jury found Givens not guilty of first-degree premeditated murder of Tomlinson; attempted robbery with a dangerous weapon, attempted robbery, and use of a firearm in the commission of a crime

---

[11]The transcript does not reveal whether the parties consented to the jury's receiving lunch before announcing the verdicts. Nor does the transcript reveal whether the jury received lunch in the jury room, or was dismissed for lunch.

of violence against each of Tomlinson, Dobbs, and Antwan; and robbery with a dangerous weapon, robbery, and use of a firearm in the commission of a crime of violence against each of Jones, Langley, and Jayvon.

Immediately after the jury's foreperson stated the verdicts, the circuit court asked: "Any requests?" Givens's counsel's responded by asking that the jury be polled. The courtroom clerk repeated the verdicts exactly as the jury's foreperson had stated them. The courtroom clerk polled the jury by asking the jury's foreperson "Is this your verdict?" and asking each other juror "[I]s [the foreperson]'s verdict your verdict?" Each of the twelve jurors separately responded: "Yes." The courtroom clerk hearkened[12] the verdict, stating "Ladies and gentlemen of the jury, h[e]arken to your verdict as the Court has recorded it." The courtroom clerk repeated the verdicts again, then asked: "So say you all?" The jurors responded "Yes." The circuit court thanked and discharged the jury, and the jury exited the courtroom at 3:25 p.m. Immediately afterward, the circuit court, the prosecutor, and Givens's counsel discussed matters that were related to the sentencing proceeding, and then the circuit court adjourned at 3:30 p.m.

**Motion to Strike**

On March 14, 2013, at 4:38 p.m., a little over an hour after the jury was discharged, Givens filed in the circuit court a "Motion to Strike Inconsistent Guilty Verdicts and/or

---

[12]"Hearken is defined . . . as 'to give heed or attention to what is said.' Although there is an alternate spelling, i.e. 'harken,' in prior opinions of this Court, when using 'hearken' as a term of art, we have consistently used this spelling." Jones v. State, 384 Md. 669, 672 n.1, 866 A.2d 151, 152 n.1 (2005) (citations omitted).

Motion to Dismiss" ("the motion to strike"), contending that "[t]he felony murder guilty verdict is inconsistent with the robbery and attempted robbery not guilty verdicts" and that "[n]o felony other than robbery, and no attempt to commit any felony other than attempted robbery, could have formed the basis for a felony murder verdict[.]"[13]  Givens requested that the circuit court strike the conviction for first-degree felony murder or dismiss that count of the indictment.

On March 19, 2013—*i.e.*, five days after the jury reached the verdicts—Givens filed in the circuit court a "Memorandum in Support of Motion to Strike Inconsistent Guilty Verdicts and/or Motion to Dismiss,"[14] in which Givens again requested that the circuit court either strike the conviction for first-degree felony murder of Tomlinson or dismiss the relevant count of the indictment on the ground that the conviction for first-degree felony murder of Tomlinson was legally inconsistent with the acquittals of robbery with a

_____

[13]The record does not demonstrate that the motion to strike was brought to the circuit court's attention when it was filed on March 14, 2013.  Indeed, the motion to strike does not appear on the circuit court's docket and originally was not contained in the record.  In the Court of Special Appeals, Givens moved for leave to supplement the record with a time- and date-stamped copy of the motion to strike; in the motion for leave to supplement the record, Givens stated that the motion to strike "bears the date and time stamp from the 'overnight box' at the [c]ircuit [c]ourt[.]"  On August 21, 2015, the Court of Special Appeals granted the motion for leave to supplement the record.  The motion to strike bears a time and date stamp of March 14, 2013, 4:38 p.m.

[14]In the Memorandum in Support of Motion to Strike Inconsistent Guilty Verdicts and/or Motion to Dismiss, Givens referred to "his previously filed motion to strike the guilty verdict for felony murder" and alleged that he had filed a motion to strike "[a]n hour after the verdict[s] had been rendered[.]"  Also on March 19, 2013, Givens filed a "Defense Request for Hearing upon Defense Motion to Strike Inconsistent Guilty Verdicts and/or Motion to Dismiss," in which Givens also referred to "the previously filed motion to strike the guilty verdict for felony murder."  It appears that the "previously filed motion to strike" refers to the motion to strike that was filed on March 14, 2013.

dangerous weapon, attempted robbery with a dangerous weapon, robbery, and attempted robbery. Givens expressly acknowledged that he had not moved to strike the allegedly inconsistent conviction until after the circuit court had discharged the jury.

Givens argued that he had not waived the issue as to the allegedly inconsistent verdicts because, according to Givens, a defendant is not required to move to strike a guilty verdict that is allegedly inconsistent with a not-guilty verdict before the trial court discharges the jury. To support that proposition, Givens relied on Price, 405 Md. at 34, 29, 15, 949 A.2d at 633-34, 630, 622, in which this Court ordered the reversal of a conviction that was inconsistent with acquittals, despite the circumstance that the defendant apparently moved to strike the conviction after the trial court discharged the jury. Givens asserted that, in Price, the Majority of this Court took a position that was inconsistent with that of Judge Harrell, who, in a concurring opinion, stated: "[A] defendant must note [an] objection to the inconsistent verdict[s] while the trial court has an opportunity to remedy the error, *i.e.*, **before the verdict[s are] final and the jury is discharged**. Failure to do so constitutes waiver." Price, 405 Md. at 42, 949 A.2d at 639 (Harrell, J., concurring) (emphasis added).

On March 21, 2013, the State filed a response to the motion to strike. In the response, the State contended that, by failing to object before the circuit court discharged the jury, Givens waived any issue as to the allegedly inconsistent verdicts. Alternatively, as to the merits, the State asserted that the verdicts were legally consistent because, as a co-conspirator, Givens was criminally liable for the first-degree felony murder that occurred during the attempted robbery of Tomlinson.

On April 26, 2013, the circuit court conducted a sentencing proceeding, at which the circuit court heard argument on the motion to strike. After hearing arguments from the parties, the circuit court denied the motion to strike, stating:

> Judge Har[rell]'s [concurring] opinion made absolute good sense, and even the [C]ourt of [S]pecial [A]ppeals said they ["]find significant solace in [his] well[-]reasoned and articulate["] opinion. [Tate v. State, 182 Md. App. 114, 129, 957 A.2d 640, 648 ("Tate II"), cert. denied, 406 Md. 747, 962 A.2d 373 (2008).] And that is what the [C]ourt of [S]pecial [A]ppeals tells me the law is, if it's not preserved or raised, in this instance, I must follow the law, and that's what the law is.

On May 22, 2013, the circuit court issued an order denying the motion to strike.

**Court of Special Appeals**

On May 27, 2013, Givens filed a notice of appeal. In an unreported opinion dated September 22, 2015, the Court of Special Appeals affirmed the circuit court's judgments and held that, by failing to object before the jury hearkened to the verdicts, Givens waived any issue as to the allegedly inconsistent verdicts. The Court of Special Appeals stated that, "[a]lthough only two other members of the Court [of Appeals] joined [the] section of Judge Harrell's concurring opinion[ in Price that involved waiver], this Court has treated that opinion as though it is authoritative on the issue of preservation and waiver" in Tate II, 182 Md. App. 114, 957 A.2d 640, Hicks v. State, 189 Md. App. 112, 984 A.2d 246 (2009), and Travis v. State, 218 Md. App. 410, 98 A.3d 281 (2014). The Court of Special Appeals explained:

> In *Tate* [*II*], 182 Md. App. at 138, [957 A.2d at 653,] this Court rejected a challenge to inconsistent verdicts in part because the defendant "was obviously content to stand pat." Similarly, in *Hicks*, 189 Md. App. at 129, [984 A.2d at 256,] this Court declined to consider a challenge to inconsistent verdicts because the defendant did not object at trial. More recently, in

- 11 -

*Travis* [], 218 Md. App. 410[, 98 A.3d 281], this Court undertook an extensive review of the developments since *Price*, including the adoption of the concurrence's precepts concerning preservation and waiver.

Despite this Court's decisions in *Tate*, *Hicks*, and *Travis*, Givens argues that he has preserved his objection because, he says, he did what Price did. To the contrary, it is not entirely clear what Price did or did not do, because neither the majority opinion nor the concurrence discussed that subject. The omission is unsurprising, as the State's briefs in *Price* appear to have made no mention of preservation or waiver. The *Price* majority, therefore, did not consider, much less hold, that defendants could challenge inconsistent verdicts on appeal even if they failed to challenge the inconsistency before the trial court discharged the jury.

## Petition for Writ of *Certiorari*

On November 6, 2015, Givens filed in this Court a petition for a writ of *certiorari*, raising the following two issues: (1) "Did the [circuit] court err in refusing to strike the verdict for felony murder?"; and (2) "Is a motion to strike an inconsistent verdict waived if not made before the discharge of the jury?" On January 27, 2016, this Court granted the petition. See Givens v. State, 446 Md. 218, 130 A.3d 507 (2016).

## DISCUSSION

### The Parties' Contentions

Givens contends that a defendant does not waive an issue as to allegedly inconsistent verdicts by failing to object before the trial court discharges the jury. Givens asserts that, in Price, 405 Md. at 34, 29, 15, 949 A.2d at 633-34, 630, 622, this Court ordered the reversal of a conviction that was inconsistent with acquittals, even though the defendant moved to strike the conviction after the trial court discharged the jury. Givens maintains that, in Price, the Majority of this Court took a position that was inconsistent with that of Judge Harrell's concurring opinion, which stated that an objection to allegedly inconsistent

- 12 -

verdicts must occur before the verdicts are final and the trial court discharges the jury. Givens contends that, in <u>Tate II</u>, 182 Md. App. 114, 957 A.2d 640, and similar cases, although the Court of Special Appeals stated that it adopted Judge Harrell's concurring opinion in <u>Price</u>, such statements were *dicta* because, in each case, no issue as to waiver of any issue as to allegedly legally inconsistent verdicts was before the Court of Special Appeals at the time.

The State responds that, in <u>Price</u>, the Majority of this Court did not address how a defendant in a criminal trial by jury preserves for review an issue as to allegedly inconsistent verdicts because no issue as to waiver was before this Court in <u>Price</u>. The State argues that Givens wrongly asserts that, in <u>Price,</u> this Court rejected the procedure for preservation of legally inconsistent verdicts set forth in Judge Harrell's concurring opinion when, in fact, the Court simply did not address the issue. The State asserts that, in <u>Tate II</u> and other opinions, the Court of Special Appeals has adopted Judge Harrell's concurring opinion in <u>Price</u>, and urges that this Court formally do so as well.

**Standard of Review**

An appellate court reviews without deference a trial court's ruling on a motion to strike a guilty verdict that is allegedly inconsistent with a not-guilty verdict. <u>See</u> <u>McNeal</u>, 426 Md. at 461-62, 44 A.3d at 985-86 (In a case in which the issue was whether a trial court erred in overruling an objection to a guilty verdict that was allegedly inconsistent with a not-guilty verdict, this Court stated: "This case presents us with a question of law and, as such, we review the trial court's decision under a non-deferential appellate standard." (Citation omitted)).

**Cases Before <u>Price</u>**

We begin by examining the history of Maryland case law regarding inconsistent verdicts. Ninety-five years ago, decades before this Court's decision in <u>Price</u>, this Court held that two guilty verdicts cannot be inconsistent with each other in a criminal case, regardless of whether a bench trial or a jury trial occurred. <u>See, e.g.</u>, <u>Novak v. State</u>, 139 Md. 538, 541, 115 A. 853, 854 (1921) (In a criminal case in which a bench trial occurred, this Court stated: "It has been argued in this [C]ourt that the [general] verdict is invalid because it does not discriminate between the count of the indictment charging robbery and that accusing the defendant of receiving stolen goods. A general verdict on these counts is said to be inconsistent in law, and hence not a proper basis for the judgment."); <u>Heinze v. State</u>, 184 Md. 613, 615, 617, 42 A.2d 128, 129, 130 (1945) (In a criminal case in which a jury trial occurred, this Court stated: "[A] finding of guilty on two inconsistent counts is invalid."); <u>see also</u> <u>Price</u>, 405 Md. at 34 n.1, 949 A.2d at 634 n.1 (Harrell, J., concurring) ("[T]wo inconsistent convictions cannot stand." (Citing <u>Heinze</u>, 184 Md. 613, 42 A.2d 128)).

Similarly, for decades, this Court has held that a guilty verdict cannot be inconsistent with a not-guilty verdict in a criminal case in which a bench trial occurred. <u>See, e.g.</u>, <u>Shell v. State</u>, 307 Md. 46, 57-58, 512 A.2d 358, 363-64 (1986) (In a criminal case in which a bench trial occurred, this Court ordered the reversal of a conviction that was inconsistent with an acquittal and concluded: "[I]t would be the height of appellate inconsistency for us to . . . hold that inconsistent verdicts in nonjury trials will generally be permitted and will be sustained in the present case."); <u>State v. Williams</u>, 397 Md. 172, 189-90, 916 A.2d 294,

305 (2007) ("[I]nconsistent verdicts of guilty and not guilty, by a trial [court] at a nonjury trial, are not ordinarily permitted." (Citations and internal quotation marks omitted)).

That said, it has not always been the case that a guilty verdict could not be inconsistent with a not-guilty verdict in a criminal case in which a jury trial occurred. In Leet v. State, 203 Md. 285, 293-94, 100 A.2d 789, 793-94 (1953)—a criminal case in which a jury trial occurred—this Court held that a conviction could be inconsistent with an acquittal. This Court reasoned: "While it is true that a finding of *guilt* on two inconsistent counts will be declared invalid in Maryland, *Heinze* [], 184 Md. [at] 617, 42 A.2d [at] 130, it does not follow that a conviction on one count may not stand because of an inconsistent acquittal on another count." Leet, 203 Md. at 293, 100 A.2d at 793 (emphasis in original). This Court stated:

> Consistency in the verdict[s] is not necessary. Each count in an indictment is regarded as if it w[ere] a separate indictment. . . . The most that can be said in [] cases [in which a conviction is inconsistent with an acquittal] is that the verdict[s] show[] that[,] either in the acquittal or the conviction[,] the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power [that] they had no right to exercise, but to which they were disposed through lenity. That the verdict[s] may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

Id. at 294, 100 A.2d at 793-94 (quoting Dunn v. United States, 284 U.S. 390, 393-94 (1932)) (citations and internal quotation marks omitted).

For decades after Leet, this Court repeated the principle that a guilty verdict could be inconsistent with a not-guilty verdict in a criminal case in which a jury trial occurred. See, e.g., Johnson v. State, 238 Md. 528, 541, 209 A.2d 765, 771 (1965) ("When there has

- 15 -

been a conviction by a jury on one count and an inconsistent acquittal on another count, . . . the conviction may stand." (Citations omitted)); Williams, 397 Md. at 189, 916 A.2d at 304 ("[I]n criminal cases, inconsistent verdicts by a jury are normally tolerated[.]" (Citations and internal quotation marks omitted)).

Leet and its progeny did not remain good law, however. This Court took a significant step toward overruling Leet and its progeny in Galloway v. State, 371 Md. 379, 416, 382-83, 809 A.2d 653, 675, 655-56 (2002), in which this Court held that a trial court erred in convicting a defendant of illegal possession of a firearm in a criminal case in which a jury acquitted the defendant of wearing, carrying, or transporting a handgun. The trial court had engaged in "the unusual procedure" of conducting a single trial at which a jury would reach verdicts as to certain charges, and the trial court would reach verdicts as to other charges. Id. at 383 & n.2, 809 A.2d at 656 & n.2.[15] In Galloway, 371 Md. at 400, 809 A.2d at 666, this Court explained: "A reading of [] prior civil cases indicates that they

---

[15]This Court observed that "[t]he procedure [that was] utilized by the [trial] court, *i.e.*, the bifurcation of the decision[-]making function between a jury and a [trial court] in respect to different counts of a single indictment in a single trial[,] is not expressly authorized in Maryland[.]" Galloway, 371 Md. at 385, 809 A.2d at 657. Ultimately, this Court stated:

> In an appropriate case[,] we might necessarily be faced with an initial question of whether a trial [court] has the discretion to grant the single trial procedure [that was] used in the instant case. We shall not resolve that issue in this case, as the case can be fully resolved on other important issues. Our declining to address this specific bifurcation issue[] should not be construed as any approval or disapproval of the procedure.

Id. at 396-97, 809 A.2d at 664 (footnotes omitted). This Court has not yet decided whether such a procedure is permissible in Maryland.

- 16 -

support the proposition that a court verdict, based upon a trial [court]'s different interpretation of the same facts, should not be allowed to nullify a jury's interpretation of those facts and its resulting verdict[.]" This Court concluded:

> [T]o accept what occurred here would be to create different, harsher, standards in criminal cases than in civil cases. We are unwilling to afford less protection to the jury trial rights of a criminal defendant, whose very liberty, or even his or her life, is at stake, than to a civil litigant, where, generally, it is money that is at stake.

Id. at 417, 809 A.2d at 676.

This Court took another definitive step toward overruling Leet and its progeny in S. Mgmt. Corp. v. Taha, 378 Md. 461, 495, 836 A.2d 627, 647 (2003), in which this Court held that a trial court erred in failing to set aside "irreconcilably inconsistent jury verdicts" in a civil case. The verdicts were irreconcilably inconsistent because the jury found that a defendant employer was liable under the doctrine of respondeat superior, yet found that the defendant employees were not liable for the "conduct [that] was alleged to be the sole basis of the claim for liability." Id. at 486, 836 A.2d at 641. Although the defendant employer did not object to the inconsistent verdicts before the trial court dismissed the jury, id. at 490, 836 A.2d at 643, this Court concluded: "Based on the circumstances in this case, it is procedurally fair to address the merits of [the defendant employer]'s contentions[,]" id. at 492, 836 A.2d at 645 (internal quotation marks omitted).

In Taha, this Court observed that, "[i]n criminal matters, inconsistent jury verdicts may be permitted to stand." Id. at 486, 836 A.2d at 641-42 (citing Dunn, 284 U.S. at 393-94). This Court went on to explain: "Nevertheless, there remains a distinction between inconsistent verdicts in criminal cases and irreconcilably inconsistent jury verdicts in civil

matters." Id. at 488, 836 A.2d at 642 (emphasis and footnote omitted). In a footnote in the preceding sentence, this Court stated: "We leave for another day the issue of whether this Court should reconsider its decision in criminal matters in which inconsistent verdicts have been rendered." Id. at 488 n.8, 836 A.2d at 642 n.8.

**Majority Opinion in Price**

In this Court's words, "the '[ ]other day' for this Court to reconsider the matter of inconsistent jury verdicts in criminal trials" arrived at the time of Price, 405 Md. at 23, 949 A.2d at 627 (quoting Taha, 378 Md. at 488 n.8, 836 A.2d at 642 n.8) (alteration in original). In Price, 405 Md. at 29, 949 A.2d at 630, this Court held that "inconsistent verdicts shall no longer be allowed." In holding as much in Price, this Court effectively overruled Leet, 203 Md. at 293-94, 100 A.2d at 793-94, and its progeny. See Tate II, 182 Md. App. at 117, 957 A.2d at 641 ("In *Price* [], the Court of Appeals expressly changed the common law of Maryland, which had in numerous cases over the course of [fifty-five] years held that, in jury trials in criminal cases, an apparent logical inconsistency between an acquittal on one charge and a conviction on another will not be interfered with by the courts and will not mandate the reversal of the conviction." (Citing, among other cases, Leet, 203 Md. at 293, 100 A.2d at 793).

In Price, 405 Md. at 15, 949 A.2d at 622, a jury acquitted a defendant of being a felon in possession of a firearm, wearing, carrying, or transporting a handgun, and all of the drug trafficking crimes with which the defendant had been charged; yet, the jury convicted the defendant of possession of a firearm during and in relation to a drug trafficking crime under sufficient circumstances to constitute a nexus to the drug trafficking

crime. Intuitively enough, this Court concluded that the conviction was inconsistent with the acquittals. See id. at 27, 949 A.2d at 629.

In Price, 405 Md. at 18-23, 949 A.2d at 624-27, we discussed the history of Maryland case law regarding inconsistent verdicts. Afterward, this Court concluded:

> The numerous exceptions to the principle tolerating inconsistent verdicts, and, more importantly, the recent opinions in [] *Taha*, [] 378 Md. 461, 836 A.2d 627, and *Galloway* [], [] 371 Md. 379, 809 A.2d 653, are circumstances [that] fully warrant a prospective change in the common law [that is] applicable to inconsistent verdicts. There is no longer any justification for the one remaining situation where inconsistent verdicts are tolerated, namely[,] certain types of inconsistent verdicts by a jury in a criminal trial. Continued acceptance of inconsistent verdicts, in that one situation, is simply not reasonable.

Price, 405 Md. at 23-24, 949 A.2d at 627.

This Court stated its holding as follows: "[W]ith regard to the instant case, similarly situated cases on direct appeal **where the issue was preserved**, and verdicts in criminal jury trials rendered after the date of our opinion in this case, inconsistent verdicts shall no longer be allowed." Id. at 29, 949 A.2d at 630 (emphasis added). This is the only instance in Price in which this Court referenced preservation. Thus, it is plainly evident that, in Price, this Court did not address the issue of waiver.

This was to be expected, given that, as far as the opinion in Price reveals, no question was presented in a petition for a writ of *certiorari* in Price concerning preservation or waiver. In Price, id. at 18, 949 A.2d at 624, the defendant filed a petition for a writ of *certiorari*, raising an issue as to the inconsistent verdicts, and the State "simultaneously filed a petition for a writ of *certiorari* with respect to the interpretation and application of [a statute]'s sentence enhancement provisions." (Italics added). In other words, the

defendant did not raise an issue as to preservation; nor did the State do so in a cross-petition for a writ of *certiorari*.

Given that no issue as to preservation was before this Court, the holding in Price does not expressly identify when the defendant raised the issue as to the inconsistent verdicts during the proceedings in the trial court, or address whether the defendant waived the issue. In Price, immediately after detailing the nature of the verdicts, this Court stated:

> [The defendant]'s [counsel] moved to strike the guilty verdict on the count charging possession of a firearm during and in relation to a drug trafficking crime . . . on the ground that it was inconsistent with the acquittals. More specifically, [the defendant's] counsel argued that commission of a drug trafficking crime is an "essential element" of the firearms offense . . . and that the jury had determined that [the defendant] did not commit a drug trafficking crime. The prosecut[or] agreed that the guilty verdict on the . . . firearms count was inconsistent with the acquittals on the drug trafficking counts, but he argued that such inconsistent verdicts were permissible. After receiving legal memoranda from the parties, the trial [court] denied the motion to strike[.]

Id. at 15, 949 A.2d at 622.

### Judge Harrell's Concurring Opinion in Price

In Price, Judge Harrell filed a concurring opinion that was divided into three parts. Part A was entitled "Distinguish Factual From Legal Inconsistency"; Part B was entitled "Relationship to the 'Rule of Consistency' in Conspiracy Cases"; and Part C was entitled "Procedure to be Followed in Challenging Inconsistent Verdicts at Trial." Price, 405 Md. at 35, 38, 40, 949 A.2d at 634, 636, 637 (Harrell, J., concurring). Two other judges joined Judge Harrell's concurrence, one generally joining Judge Harrell's concurring opinion in its entirety, and another joining only Part C of Judge Harrell's concurring opinion. See id. at 42, 949 A.2d at 639 (Harrell, J., concurring).

In Part A, Judge Harrell stated: "[T]he Majority's holding applies only to 'legally inconsistent' verdicts, not 'factually inconsistent' verdicts." Id. at 35, 949 A.2d at 634 (Harrell, J., concurring). Judge Harrell explained the difference between legally inconsistent verdicts and factually inconsistent verdicts as follows:

> [F]actually inconsistent verdict[s are] one[s] where a jury renders different verdicts on crimes with distinct elements when there was only one set of proof at a given trial, which makes the verdict[s] illogical. The feature distinguishing [] factually inconsistent verdict[s] from [] legally inconsistent verdict[s] is that [] factually inconsistent verdict[s are] merely illogical. By contrast, [] legally inconsistent verdict[s] occur[] where a jury acts contrary to a trial [court]'s proper instructions regarding the law. The difference between the two is perhaps best illustrated by examples[.]

> Assume [that] a legally intoxicated . . . driver causes a head-on collision, killing on impact the driver and passenger of the other car. The intoxicated driver is charged with two counts of vehicular homicide. The jury convicts the defendant of vehicular homicide as to the death of the driver of the other car, but finds the defendant not guilty of the same crime with regard to the death of the passenger. Such a result would constitute factually inconsistent verdicts.

> The verdicts in the present case also contain a factual inconsistency. [The defendant] was acquitted of being a felon in possession of a handgun, but convicted of possessing a handgun in the course of drug trafficking. There was no dispute at trial as to [the defendant]'s prior felony convictions. Therefore, it is illogical for the jury to find that [the defendant] is guilty of possessing a firearm in the course of drug trafficking without possessing a firearm as a convicted felon. Despite the illogical verdict[s], this does not rise to the level of [] legally inconsistent verdict[s]. Thus, if this were the only ground[] for challenging [the defendant]'s conviction for possession of a handgun in the course of drug trafficking, his conviction should be affirmed.

> A legal inconsistency, by contrast, occurs when an acquittal on one charge is conclusive as to an element which is necessary to[,] and inherent in[,] a charge on which a conviction has occurred. . . . [I]f the essential elements of the counts of which the defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted, then the verdicts are inconsistent. Verdicts of guilty of crime A but not guilty of crime

- 21 -

B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist.

> As [the defendant]'s acquittal established conclusively that he was not engaged in drug trafficking, the Majority opinion correctly concludes that the conviction for possession of a handgun while engaged in drug trafficking may not stand.

Id. at 35-38, 949 A.2d at 634-36 (Harrell, J., concurring) (brackets, citations, footnotes, and internal quotation marks omitted).

In Part C, Judge Harrell addressed preservation of any issue as to allegedly inconsistent verdicts as follows:

> The Majority opinion properly notes that[,] "where the issue was preserved[,]" . . . "inconsistent verdicts shall no longer be allowed." Because of the "sea change" announced by the Majority's opinion, some prospective direction is necessary and desirable to highlight the procedure [that is] required in order for a defendant to preserve for appellate review a challenge to [] legally inconsistent verdict[s].
>
> [A] jury may render [] legally inconsistent verdict[s] to show lenity to [a] defendant. The defendant should not be foreclosed from accepting the jury's lenity as a result of the holding of the Majority opinion. Nevertheless, **we should not permit the defendant to accept the jury's lenity in the trial court, only to seek a windfall reversal on appeal by arguing that the [] verdicts are inconsistent. Accordingly, a defendant must note his or her objection to allegedly inconsistent verdicts prior to the verdicts becoming final and the discharge of the jury. Otherwise, the claim is waived.**[16] "If a defendant claims that [] verdict[s are] inconsistent to the

---

[16]In fact, quite often[,] a defendant's optimal choice will be to remain silent, thus waiving his [or her] challenge to the inconsistent verdicts and accepting the conviction that may be inconsistent. A defendant, aware of his or her guilt, or the overwhelming evidence of guilt, of all of the crimes of which he or she stands charged, may choose to accept the jury's lenity. A defendant may be wise to accept the inconsistent conviction and accompanying sentence, rather than look a gift horse in the mouth. If the defendant objects to the inconsistent verdicts, the jury, given a second chance, may choose to remedy the error in a manner [that is] not in the defendant's favor.

point of being self-destructive, he [or she] must present that claim to the [trial] court before the jury is discharged; if [the defendant] does not, he [or she] waives the claim." *State v. Flemons*, 144 S.W.3d 877, 881 (Mo. Ct. App. 2004); *see also State v. Pelz*, 845 S.W.2d 561, 565 (Mo. Ct. App. 1992) ("Defense counsel stood silent during the [trial] court's perusal of the error and the prosecutor's positive acceptance of the verdict[s]. This silence, operating as an acceptance of the verdict[s], waived any further review. . . ."); *People v. Satloff*, [] 437 N.E.2d 271, 272 ([N.Y. ]1982) (mem.) ("Following discharge of the jury, [the defendant's] counsel complained, for the first time, of the asserted inconsistency. At this point, it was no longer possible to remedy the defect, if any, by resubmission to the jury for reconsideration of [the] verdicts. Such a protest must be registered prior to the discharge of the jury properly to preserve the issue for review in this [C]ourt." ([C]itation omitted)).

"A verdict that has not been followed by either polling or hearkening, has not been properly rendered and recorded, and is a nullity." *Jones v. State*, 173 Md. App. 430, 457, 920 A.2d 1, 16 (2007). "It is in the absence of a demand for a poll that a hearkening is required for the proper recordation of a verdict." *Jones v. State*, 384 Md. 669, 684, 866 A.2d 151, 160 (2005).

> In the absence of a proper demand to have the jury polled, the hearkening and ensuing acceptance of the verdict finally remove[] the matter from the jury's consideration. But, despite a hearkening, if a demand for a poll is duly made thereafter, it is the acceptance of the verdict upon the poll that removes the verdict from the province of the jury. In other words, the jury has control of the verdict until it is final. Absent a demand for a poll, the verdict becomes final upon its acceptance when hearkened. When a poll is demanded, the verdict becomes final only upon its acceptance after the poll.

*Smith v. State*, 299 Md. 158, 168, 472 A.2d 988, 993 (1984).

Upon timely objection by the defendant[17] to legally inconsistent verdicts, the trial court should instruct or re-instruct the jury on the need for consistency and the range of permissible verdicts. The jur[y] then should be permitted to resume deliberation. The jury is free to resolve the inconsistency either by returning verdict[s that are] in the defendant's favor,

---

[17]Because the rule against legally inconsistent verdicts is intended to protect the criminal defendant, the State may not object to the inconsistent verdicts. The option belongs only to the defendant.

convicting on the implicated counts, or deadlocking on a charge so that no inconsistent finding results. "Until the announcement that the verdict[s] ha[ve] been recorded, the jury has the right to amend or change any verdict; and[,] when it is so amended[, they are] the real verdict[s] of the jury[,] and [they] may be properly accepted by the [trial] court." *Heinze* [], 184 Md. [at] 617, 42 A.2d [at] 130[.][18]

*Price*, 405 Md. at 40-42, 949 A.2d at 637-38 (Harrell, J., concurring) (emphasis added) (some ellipses in original; footnotes in original but renumbered) (some citations and internal quotation marks omitted).

## McNeal and Tate II

Recently, in McNeal, this Court unanimously adopted Part A of Judge Harrell's concurring opinion in Price, and held that, although a guilty verdict cannot be legally inconsistent with a not-guilty verdict, a guilty verdict may be factually inconsistent with a not-guilty verdict. See McNeal, 426 Md. at 459, 44 A.3d at 984 ("[W]e adopt as our holding here the thrust of the concurring opinion in *Price*, that jury verdicts [that] are illogical or factually inconsistent are permitted in criminal trials[.]"). In McNeal, although this Court quoted Part C of Judge Harrell's concurring opinion in Price, see McNeal, 426 Md. at 466, 44 A.3d at 989, this Court was not asked to decide whether to adopt Part C of Judge Harrell's concurring opinion in Price—*i.e.*, to decide whether a defendant waives any issue as to allegedly inconsistent verdicts by failing to timely object—as, in McNeal,

---

[18]There is no double jeopardy consequence in permitting the trial court, upon the defendant's request, to re-instruct the jury and permit it to return to deliberations. The defendant knowingly and affirmatively waives any challenge to the jury's reconsideration of the inconsistent verdicts by objecting to the inconsistent verdicts before they become final. Even if the issue is not waived when the defendant objects, the double jeopardy prohibition . . . prevents further deliberation on an acquittal only after that verdict is final.

- 24 -

426 Md. at 460-61, 44 A.3d at 985, after the jury's foreperson stated the verdicts, but before the courtroom clerk had the jury hearken to the verdicts, the defendant objected to the allegedly inconsistent verdicts and requested that the trial court send the jury back to resolve the alleged inconsistency.

This case presents the first instance in which this Court has had the opportunity to decide whether to adopt Part C of Judge Harrell's concurring opinion in Price—that is, this is the first case in which this Court is to address how a defendant in a criminal trial by jury preserves for review an issue as to allegedly inconsistent verdicts. For its part, in multiple cases, the Court of Special Appeals has adopted Part C of Judge Harrell's concurring opinion in Price.

Specifically, in Tate II, 182 Md. App. at 138, 129, 957 A.2d at 653, 648, the Court of Special Appeals indicated that a defendant waived an issue as to allegedly inconsistent verdicts by failing to timely object after the jury's foreperson stated the verdicts; in indicating as much, the Court of Special Appeals "f[ou]nd significant solace in the well[-]reasoned and articulate concurring opinion of Judge Harrell (joined by [one Judge] and in part by [another Judge]) in *Price* []."

Tate II, 182 Md. App. 114, 957 A.2d 640, was the second decision of the Court of Special Appeals to arise out of one appeal. After that Court affirmed the defendant's conviction, see Tate v. State, 176 Md. App. 365, 412, 933 A.2d 447, 475 (2007) ("Tate I"), this Court vacated Tate I and remanded to the Court of Special Appeals for further consideration in light of Price, see Tate v. State, 405 Md. 106, 107, 950 A.2d 100, 100 (2008) (per curiam).

On remand, the Court of Special Appeals again affirmed the defendant's conviction, and provided both a "primary holding" and a "secondary and independent holding" as support for the affirmance. See Tate II, 182 Md. App. at 138, 957 A.2d at 653-54. That Court's primary holding was that the defendant's conviction for sexual abuse of a minor was "not necessarily inconsistent with" the defendant's acquittal of fourth-degree sexual offense. Id. at 129, 957 A.2d at 648. That Court's secondary holding was that the defendant waived an issue as to the allegedly inconsistent verdicts by failing to timely object after the jury's foreperson stated the verdicts. See id. at 138, 957 A.2d at 653.

In discussing Part C of Judge Harrell's concurring opinion in Price, the Court of Special Appeals stated: "**What the defendant may not do . . . is to have his [or her] cake and eat it too.**" Tate II, 182 Md. App. at 132, 957 A.2d at 650 (emphasis added). That Court went on to state:

> Given a set of inconsistent verdicts, the defendant is at a distinct tactical advantage. The obvious cure for an inconsistency in verdicts would be to send the jury back to resolve the inconsistency: "Ladies and gentlemen of the jury, you can't have it both ways. Give us two acquittals or give us two convictions." The problem, of course, is that few defendants, enjoying the quite[-]unexpected boon of an inconsistent acquittal, are willing to "roll the dice, double or nothing." Consistency for its own sake does not mean that much to them. They are prone to complain about the lack of consistency after it is no longer available, but are far from enthusiastic about pursuing consistency while it is still available.
>
> . . .
>
> There is a small window of opportunity in which the jury may still be sent back to the jury room to resolve any troubling inconsistencies or ambiguities. At such a strategic junction, the defendant enjoys an immense advantage, but it is an advantage that must be exercised then and there. When inconsistent verdicts are rendered, the [trial court] may not, *sua sponte*, send the jury back to resolve the inconsistency, because it is the defendant who is

- 26 -

entitled, should he [or she] so wish, to accept the benefit of the inconsistent acquittal. By the same token, the prosecutor may not ask to have the jury sent back to resolve the inconsistency, because it is the defendant, once again, who is entitled, should he [or she] so wish, to accept the benefit of the inconsistent acquittal. The defendant is authorized to call the shots at that critical moment, but the defendant must call them before the moment passes. After that, the jury will be gone beyond recall. **The defendant may not stand mute and later complain about the verdicts [that] he [or she] did nothing to cure at the only time [that] a cure was still possible.**

. . .

**[Part C of Judge Harrell's concurring opinion in <u>Price</u>] spells out the obvious procedure that must be followed. It is the only procedure that makes sense. The defendant faces the choice either of having the jury resolve the inconsistency or of standing pat and enjoying the inconsistency. He [or she] has to decide "when to hold 'em and when to fold 'em." If he [or she] chooses the latter, he [or she] may not later complain. A defendant simply may not seek to exploit an alleged inconsistency without taking the necessary step to cure or resolve the inconsistency when it is still possible to do so. If a defendant chooses, on the other hand, to cast him[- or her]self as the champion of jury verdict consistency, he [or she] must accept the perils of the part.**

<u>Tate II</u>, 182 Md. App. at 134-36, 957 A.2d at 651-52 (emphasis added).

Applying Part C of Judge Harrell's concurring opinion in <u>Price</u> to <u>Tate II</u>'s facts, the Court of Special Appeals noted that the defendant "clearly did nothing by way of objecting to the reception of the verdicts or by way of asking that the jury be sent back to resolve any alleged inconsistency in [the] verdicts." <u>Tate II</u>, 182 Md. App. at 136-37, 957 A.2d at 653. The Court of Special Appeals quoted the trial transcript, which revealed that the jury's foreperson stated the verdicts; the courtroom clerk had the jury hearken to the verdicts; and the trial court discharged the jury. See <u>id.</u> at 137, 957 A.2d at 653. At no time after the jury's foreperson stated the verdicts did the defendant or his counsel say anything at all, much less object to the allegedly inconsistent verdicts. See <u>id.</u> at 137-38,

957 A.2d at 653. The Court of Special Appeals concluded by observing that the defendant "was obviously content to stand pat." Id. at 138, 957 A.2d at 653.

## Cases After Tate II

Given that, in Tate II, 182 Md. App. at 138, 129, 957 A.2d at 653, 648, the "primary holding" of the Court of Special Appeals was that the verdicts were "not necessarily inconsistent[,]" arguably, that Court's discussion of waiver was an alternative holding. That said, in multiple cases after Tate II, the Court of Special Appeals has expressly held that, by failing to timely object, defendants waived any issue as to allegedly inconsistent verdicts.

Specifically, in Hicks, 189 Md. App. at 129, 984 A.2d at 256, the Court of Special Appeals held that, by failing to object "at trial[,]" a defendant waived any issue as to allegedly inconsistent verdicts. That Court noted that, as did the defendant in Tate II, the defendant in Hicks "clearly did nothing by way of objecting to the reception of the verdicts or by way of asking that the jury be sent back to resolve any alleged inconsistency in [the] verdicts." Hicks, 189 Md. App. at 129, 984 A.2d at 256 (quoting Tate II, 182 Md. App. at 136-37, 957 A.2d at 653) (internal quotation marks omitted). In Hicks, 189 Md. App. at 129, 984 A.2d at 256, the Court of Special Appeals declined the defendant's invitation to engage in plain error review, and thus refrained from addressing whether the verdicts were inconsistent with each other.

Similarly, in Martin v. State, 218 Md. App. 1, 40, 96 A.3d 765, 788, cert. denied, 440 Md. 463, 103 A.3d 594 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 2068 (2015), the Court of Special Appeals held that, by failing to raise any issue as to allegedly inconsistent

- 28 -

verdicts at any time in the trial court, a defendant waived any issue as to the allegedly inconsistent verdicts. In Martin, 218 Md. App. at 39, 96 A.3d at 788, the jury's foreperson stated the verdicts; the defendant's counsel requested that the jury be polled; and the jury was polled, hearkened to the verdicts, and was discharged. Afterward, the trial court, the prosecutor, and the defendant's counsel discussed matters that were related to the sentencing proceeding, and then the trial court adjourned. See id. at 39-40, 96 A.3d at 788. "At no time did [the defendant] object to the allegedly inconsistent verdicts." Id. at 40, 96 A.3d at 788. "In fact, [the defendant] waited until th[e] appeal to raise th[e] issue" as to the allegedly inconsistent verdicts. Id. at 40, 96 A.3d at 788. Accordingly, the Court of Special Appeals "h[e]ld that the issue [wa]s not properly before" that Court. Id. at 40, 96 A.3d at 788.[19]

The Court of Special Appeals has applied Part C of Judge Harrell's concurring opinion in Price not only to jury trials, but also to at least one bench trial. Specifically, in Travis, 218 Md. App. at 468-69, 98 A.3d at 315, the Court of Special Appeals indicated that a defendant waived an issue as to allegedly inconsistent verdicts by failing to timely object after a trial court stated the verdicts at the conclusion of a bench trial. After the trial court stated the verdicts, the trial court asked whether a presentence investigation was necessary; the prosecutor stated that the prosecutor was unsure; and the defendant's

---

[19]Alternatively, as to the merits, the Court of Special Appeals concluded: "In any event, if the issue had been preserved for our review, we would find that it has no merit. . . . There is no legal inconsistency between [the defendant]'s conviction [for] attempted first-degree murder and his acquittal of solicitation [to commit murder]." Martin, 218 Md. App. at 40-41, 96 A.3d at 789.

- 29 -

counsel stated: "I would ask the court to proceed to sentencing." Id. at 469, 98 A.3d at 315 (emphasis omitted). The Court of Special Appeals observed: "To ask the [trial] court to proceed to sentencing is not to lodge an objection to [allegedly] inconsistent verdicts." Id. at 469, 98 A.3d at 315. Although the Court of Special Appeals "h[e]ld that there was no fatal inconsistency between the convictions and the acquittal[,]" that Court went on to state: "Simply as a cautionary back-up position, we note that the [defendant] was either blissfully unaware of any inconsistency in [the] verdicts as they were announced[,] or was content to enjoy his windfall of an acquittal." Id. at 468, 98 A.3d at 315.

Notably, the Court of Special Appeals has not held that a waiver occurred in every single case in which there was an issue as to preservation of an issue as to allegedly inconsistent verdicts. Specifically, in Teixeira v. State, 213 Md. App. 664, 674, 75 A.3d 371, 377 (2013), the Court of Special Appeals held that a defendant did not waive an issue as to allegedly inconsistent verdicts where the defendant objected after the trial court discharged the jury, but before the jury left the courthouse. In Teixeira, id. at 669, 75 A.3d at 373, the jury stated the verdicts, was polled, hearkened to the verdicts, and was discharged. Afterward, but before the jury left the courthouse, the defendant's counsel brought the alleged inconsistency in the verdicts to the trial court's attention. See id. at 669-70, 75 A.3d at 373-74. "After briefly hearing from both parties, the [trial] court directed the [courtroom] clerk to 'have the jury remain' while further argument was presented." Id. at 670, 75 A.3d at 374 (brackets omitted). There was no indication that any of the jurors had discussed the case with anyone else at that point. See id. at 677, 75 A.3d at 378. After hearing the parties' arguments, the trial court concluded that the verdicts

were legally consistent, and thus allowed the verdicts to stand.  See id. at 673, 75 A.3d at 376.  Afterward, the trial court "finally dismissed" the jury.  Id. at 674, 75 A.3d at 377.

On appeal, the defendant contended that the verdicts were legally inconsistent, and the State responded that, by failing to object until after the trial court discharged the jury, the defendant waived any issue as to the allegedly inconsistent verdicts.  See id. at 668, 673, 75 A.3d at 373, 376.  The Court of Special Appeals addressed a trial court's ability to recall its discharge of a jury as follows:

> The mere announcement of the discharge of the jurors does not preclude recalling them if they have not yet dispersed and mingled with the bystanders.  Although the decisions are not uniform, it has often been held that, when the jurors have rendered the[] verdict and have been discharged, but have not yet left the courtroom or the courthouse, the trial [court] may recall the order of discharge and reassemble the jurors to amend the[] verdict as to a matter of form or, in some cases, substance.

Id. at 676, 75 A.3d at 378 (quoting Hoffert v. State, 319 Md. 377, 390, 572 A.2d 536, 543 (1990) (Chasanow, J., dissenting)) (in turn, quoting 4 C. Torcia, Wharton's Criminal Procedure, 12th Ed. § 578, at 141 (1976)).  The Court of Special Appeals restated this principle as follows:

> [T]he operative element in determining when and whether a jury's functions are at an end is not when the jury is told it is discharged[,] but when the jury is dispersed, that is, has left the jury box, the court[]room[,] or the court[]house, had an opportunity to discuss the case with others[,] and is no longer under the guidance, control[,] and jurisdiction of the [trial] court.

Teixeira, 213 Md. App. at 677, 75 A.3d at 378.  Applying this principle to Teixeira's facts, the Court of Special Appeals "conclude[d] that [the defendant's counsel's] question about the propriety of the verdicts was timely" because "the trial [court] directed the [courtroom] clerk to hold the jury shortly after [the defendant's] counsel raised this issue" and the jury

"remained subject to recall and was finally dismissed only after the trial [court] heard argument and ruled."  Id. at 674, 75 A.3d at 377.

Recently, in Dietz v. Bouldin, __ U.S. __, No. 15-458, 2016 WL 3189528, at *3 (U.S. June 9, 2016), a civil case, the Supreme Court held "that a federal district court has the inherent power to rescind a jury discharge order and recall a jury for further deliberations after identifying an error in the [] verdict[s]."  In Dietz, id., although the Supreme Court expressly refrained from addressing a trial court's ability to recall discharged jurors in a criminal case, the case is instructive as to the analysis to be undertaken in criminal cases.

In Dietz, id., a jury reached a verdict; the trial court discharged the jury; and the jurors left the courtroom.  "A few minutes later, the [trial] court ordered the [courtroom] clerk to bring the jurors back."  Id.  Outside the jurors' presence, the trial court explained to the parties' counsel that the trial court had just realized that the verdict was legally impermissible.  See id.  The jurors returned to the courtroom, and the trial court questioned them and confirmed that they had not discussed the case with anyone else.  See id. at *4. The trial court re-instructed the jurors and ordered them to begin deliberating again.  See id.  The jurors did so, and reached a new, legally permissible verdict.  See id.

The losing party appealed and contended that the trial court erred in recalling the jury.  See id.  The Supreme Court disagreed and explained:

> [T]wo principles—an inherent power must be a reasonable response to a specific problem[,] and the power cannot contradict any express rule or statute—support the conclusion that a [trial court] has a limited inherent power to rescind a discharge order and recall a jury in a civil case where the [trial] court discovers an error in the [] verdict.

Id. The Supreme Court also stated:

> [W]e caution that our recognition here of a [trial] court's inherent power to recall a jury is limited to civil cases only. Given additional concerns in criminal cases, such as attachment of the double jeopardy bar, we do not address here whether it would be appropriate to recall a jury after discharge in a criminal case.

Id. at *8 (citation omitted). Thus, in Dietz, id., the Supreme Court did not address a trial court's recall of discharged jurors in a criminal case, but provided guidance that, after discharge of a jury, issues such as attachment of the double jeopardy bar may be implicated by the jury's recall for further deliberations.

**Cases from Other Jurisdictions**

Although this Court has not yet addressed how a defendant in a criminal trial by jury preserves for review an issue as to allegedly inconsistent verdicts, multiple courts in other jurisdictions have done so; and the vast majority of such courts have concluded that, by failing to object before the trial court discharges the jury, a defendant in a criminal trial by jury waives any issue as to allegedly inconsistent verdicts. See Miller v. State, 312 P.3d 1112, 1114 (Alaska Ct. App. 2013) (The defendant "forfeited his right to attack the verdicts as being inconsistent, because he did not raise this issue in the [trial] court **before the jury was discharged**." (Emphasis added)); People v. Rail, ___ P.3d ___, No. 13CA0392, 2016 WL 736336, at *7 (Colo. App. Feb. 25, 2016) (The defendant "waived his inconsistency claim. . . . [H]ad [the defendant] raised the inconsistency **before the jury was discharged**, it would have been correctable." (Emphasis added) (citations and paragraph break omitted)); Mayorga v. State, 484 S.E.2d 292, 293 (Ga. Ct. App. 1997) (The defendant's

"assertion that the conviction is inconsistent with the fact that the jury deadlocked on [another] charge is meritless. . . . [The defendant] waived any such assertion by failing to object to the form of the verdict[s] **at the time [that they were] rendered**." (Emphasis added) (citation omitted)); Beaty v. Commonwealth, 125 S.W.3d 196, 214, 215, 216 (Ky. 2003) ("[T]he jury returned . . . inconsistent verdicts . . . . [A] failure to object to [] verdict[s] that [are] inconsistent . . . constitutes a waiver for purposes of appeal. . . . In this case, [the defendant] failed to object to the verdict[s] as inconsistent, incorrect, or ambiguous **before the jury was discharged**." (Emphasis added) (citations omitted)); State v. Whittemore, 276 S.W.3d 404, 408 n.2 (Mo. Ct. App. 2009) ("To be properly preserved for appellate review, a claim that a jury's verdicts are inconsistent must be presented to the trial court **before the jury is discharged**. [The d]efendant failed to do so, so he is limited to a request for plain error review." (Emphasis added) (citations omitted)); People v. Alfaro, 489 N.E.2d 1280, 1281 (N.Y. 1985) ("[I]n jury cases[,] any claim that the verdict[s are] repugnant must be made **before the jury is discharged**. This permits the court to resubmit the matter to the jury to obtain [] consistent verdict[s.]" (Emphasis added) (citations omitted)); State v. Zweigart, 188 P.3d 242, 249 (Or. 2008) (The "defendant argues that the verdicts present what he claims to be an 'inconsistency' . . . . [H]owever, [the] defendant made no objection respecting either the verdicts or the sentences entered pursuant to them. There was a procedure under which [the] defendant could have **asked to have the jurors reconsider their verdicts**, but [the] defendant did not attempt to use that procedure. We therefore decline to correct any 'plain error' that may exist." (Emphasis added) (citation and footnote omitted)); Commonwealth v. Brightwell, 388

- 34 -

A.2d 1063, 1066 (Pa. 1978) ("Had [the defendant] objected and the [trial] court determined the verdict[s] w[ere] inconsistent, the [trial] court could have **directed the jury to retire and reconsider [the] verdict[s]**. By waiting until post-verdict motions to raise the issue, [the defendant] deprived the [trial] court of an opportunity to correct any error. Consequently, [the defendant] may not now complain of inconsistency in the verdict[s]." (Emphasis added) (citations omitted)).

Indeed, very few courts in other jurisdictions have concluded that, by failing to object before the trial court discharges the jury, a defendant in a criminal trial by jury does not waive any issue as to allegedly inconsistent verdicts. See Louberti v. State, 895 So. 2d 479, 481 (Fla. Dist. Ct. App. 2005) ("[T]he [S]tate argues that [] inconsistent verdict[s] must be objected to before the jury is discharged so that the [trial] court can 're-instruct the jury and send it back for further deliberations.' . . . Once the jury acquitted [the defendant] of [certain] charges, double jeopardy would have precluded the jury from reconsidering those charges. Accordingly, an objection would have served no purpose[.]");[20] People v. Ousley, 697 N.E.2d 926, 930 (Ill. App. Ct. 1998) (The "defendant's failure to raise the issue of the jury's legally inconsistent verdicts at trial or in a post-trial motion does not result in a waiver of that issue because legally inconsistent verdicts present plain error, the exception to the rule of waiver." (Citation omitted)); State v. Goins, 92 P.3d 181, 183 (Wash. 2004) (The defendant "assigned error to the apparently irreconcilably inconsistent nature of the general and special verdicts. [The defendant] argues that the inconsistent

---

[20]As discussed below in our analysis, we disagree with the Florida court's reasoning as to double jeopardy.

verdicts violated his rights to due process . . . . [A] claim may be raised for the first time on appeal if it amounts to a manifest error affecting a constitutional right." (Citation omitted)).

It is worth noting that, in two of these three States—Illinois and Washington—rules of appellate procedure expressly allow a defendant in a criminal case to raise an issue that pertains to "constitutional" or "substantial" rights for the first time on appeal. See Ill. Comp. Stat. Ann., S. Ct. Rule 615(a) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."); Wash. R. App. Proc. 2.5(a) ("[A] party may raise . . . for the first time in the appellate court . . . manifest error affecting a constitutional right[.]"). The closest thing that Maryland law has to a counterpart to such rules of appellate procedure is the doctrine of plain error, which requires more than the mere circumstance that an issue pertains to substantial rights. Specifically, as this Court explained in State v. Rich, 415 Md. 567, 578, 3 A.3d 1210, 1216-17 (2010):

> [P]lain-error review[ ]involves four steps, or prongs. First, there must be an error or defect[—]some sort of deviation from a legal rule[—]that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the [defendant]. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the [defendant]'s substantial rights, which[,] in the ordinary case[,] means [that the defendant] must demonstrate that [the error] affected the outcome of the [trial] court proceedings. Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the discretion to remedy the error[—]discretion [that] ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Meeting all four prongs is difficult, as it should be.

(Brackets, citations, and internal quotation marks omitted); see also White v. State, 223

Md. App. 353, 403 n.38, 116 A.3d 520, 550 n.38 (2015) ("Appellate review under the plain error doctrine 1) always has been, 2) still is, and 3) will continue to be a rare, rare phenomenon." (Brackets, citation, and internal quotation marks omitted)).

**The Finality of Verdicts**

As this Court explained in <u>Smith</u>, 299 Md. at 168, 472 A.2d at 993, a verdict becomes final when the trial court accepts the verdict after the jury has been polled—or, if the jury was not polled, when the trial court accepts the verdict after the jury has hearkened to the verdict. In <u>Smith</u>, <u>id.</u> at 170, 472 A.2d at 994, the State charged the defendant with first-degree murder, robbery with a deadly weapon, and use of a firearm in the commission of a crime of violence. The jury found the defendant not guilty of first-degree murder and robbery with a deadly weapon, and guilty of use of a firearm in the commission of a crime of violence. <u>See id.</u> at 171, 472 A.2d at 994. The prosecutor requested that the jury be polled. <u>See id.</u> at 171, 472 A.2d at 994. During the poll, only six of the jurors agreed that the defendant was not guilty of first-degree murder and robbery with a deadly weapon, and guilty of use of a firearm in the commission of a crime of violence;[21] and five of the jurors indicated that the defendant was not guilty of any of the three charges. <u>See</u> <u>Smith</u>, 299 Md. at 173-76, 472 A.2d at 995-96. During the poll, the jury's foreperson originally stated that the defendant was not guilty of first-degree murder and robbery with a deadly weapon, and guilty of use of a firearm in the commission of a crime of violence. <u>See id.</u> at 172-73, 472

---

[21]When polled about the verdict as to use of a firearm in the commission of a crime of violence, one of those six jurors responded: "Not guilty-guilty." <u>Smith</u>, 299 Md. at 175, 472 A.2d at 996. According to this Court, that "juror initially said that his verdict was not guilty[,] but then promptly changed it to guilty." <u>Id.</u> at 178, 472 A.2d at 997.

A.2d at 995.

After the courtroom clerk polled all of the jurors, the prosecutor requested that the jury's foreperson be polled again because she "was hesitant"; the trial court asked the jury's foreperson whether she wanted to be polled again, and the jury's foreperson responded: "Okay." See id. at 176, 472 A.2d at 996. The courtroom clerk polled the jury's foreperson a second time, and the jury's foreperson stated that the defendant was guilty of all three charges. See id. at 176, 472 A.2d at 996-97. The trial court sent the jury back to resume deliberating. See id. at 177, 472 A.2d at 997. After two hours and twenty-five minutes, the jury advised that it was unable to reach a unanimous verdict as to any of the three charges. See id. at 177, 472 A.2d at 997. The trial court declared a mistrial. See id. at 177, 472 A.2d at 997. The State reprosecuted the defendant as to all three charges, and a second jury acquitted the defendant of first-degree murder, but convicted the defendant of robbery with a deadly weapon and use of a firearm in the commission of a crime of violence. See id. at 162, 472 A.2d at 990.

On appeal, the defendant contended that the prohibition on double jeopardy barred the reprosecution as to first-degree murder and robbery with a deadly weapon. See id. at 162-63, 472 A.2d at 990. According to the defendant, a final acquittal occurred when, during polling, all twelve jurors initially stated that the defendant was not guilty of first-degree murder and robbery with a deadly weapon. See id. at 178, 472 A.2d at 997-98. This Court disagreed with the defendant's contention, stating: "The verdicts of the jury as presented to the trial court did not reflect an actual agreement of the jury[,] and did not represent a final acquittal on any of the charges." Id. at 179, 472 A.2d at 998. This Court

pointed out that the trial court "never accepted as the verdicts of the jury" the verdicts as to first-degree murder and robbery with a deadly weapon. Id. at 179, 472 A.2d at 998. This Court explained that a verdict becomes final when the trial court accepts the verdict, stating:

> In the absence of a proper demand to have the jury polled, the hearkening and ensuing acceptance of the verdict finally remove[] the matter from the jury's consideration. But, despite a hearkening, if a demand for a poll is duly made thereafter, it is the acceptance of the verdict upon the poll that removes the verdict from the province of the jury. In other words, the jury has control of the verdict until it is final. Absent a demand for a poll, the verdict becomes final upon its acceptance when hearkened. When a poll is demanded, the verdict becomes final only upon its acceptance after the poll.

Id. at 168, 472 A.2d at 993; see also id. at 169, 472 A.2d 993 ("Until the announcement that the verdict has been recorded, the jury have the right to amend or change any verdict; and[,] when it is so amended[,] it is the real verdict of the jury[,] and it may be properly **accepted by the [trial] court**." (Emphasis added) (citation and internal quotation marks omitted)).

In multiple cases since Smith, 299 Md. at 168, 472 A.2d at 993, this Court has confirmed that a verdict becomes final when the trial court accepts the verdict after the jury has been polled—or, if the jury was not polled, when the trial court accepts the verdict after the jury has hearkened to the verdict. See State v. Santiago, 412 Md. 28, 38, 985 A.2d 556, 562 (2009) ("A verdict is not final until after the jury has expressed their assent in one of two ways, by hearkening or by a poll." (Brackets, citation, and internal quotation marks omitted)); Jones v. State, 384 Md. 669, 683-84, 866 A.2d 151, 159-60 (2005) ("When a poll is demanded, the verdict becomes final only upon its acceptance after the poll. . . . It

is in the absence of a demand for a poll that a hearkening is required for the proper recordation of a verdict." (Citing Smith, 299 Md. at 168, 166, 472 A.2d at 993, 992)); Hoffert v. State, 319 Md. 377, 386, 572 A.2d 536, 541 (1990) ("When the jury was polled on the verdicts of not guilty on the first three charges, and the poll disclosed that the verdicts were unanimous, the verdicts were final." (Citations omitted)).

**Analysis**

In this case, a careful reading of this Court's precedent compels the same conclusion that Judge Harrell reached in the concurring opinion in Price, that the Court of Special Appeals has reached in multiple cases, and that the vast majority of courts in other jurisdictions that have addressed the issue have reached—namely, to preserve for review any issue as to allegedly inconsistent verdicts, a defendant in a criminal trial by jury must object to the allegedly inconsistent verdicts or otherwise make known his or her position before the verdicts become final and the trial court discharges the jury.

As this Court has repeatedly stated, one of the purposes of the requirement that a defendant preserve issues for review is to give a trial court the opportunity to correct any error in the proceedings. See, e.g., Peterson v. State, 444 Md. 105, 126, 118 A.3d 925, 937 (2015) ("Fairness and the orderly administration of justice [are] advanced by requiring counsel to bring the position of their client to the attention of the [trial] court at the trial so that the trial court can pass upon, and possibly correct[,] any errors in the proceedings." (Citation and internal quotation marks omitted)).

Where a jury reaches legally inconsistent verdicts, and the verdicts are not final and the jury has not been discharged, a trial court may correct the error in the proceedings by

sending the jury back to deliberate to resolve the inconsistency. See Price, 405 Md. at 41-42, 949 A.2d at 638 (Harrell, J., concurring) ("[T]he trial court should instruct or re-instruct the jury on the need for consistency and the range of permissible verdicts. The jur[y] then should be permitted to resume deliberation."); Tate II, 182 Md. App. at 134, 957 A.2d at 651 ("The obvious cure for an inconsistency in verdicts would be to send the jury back to resolve the inconsistency[.]").

At the risk of stating the obvious, this method of correcting any inconsistency in the verdicts is unavailable where a defendant raises an issue as to inconsistent verdicts after the verdicts have become final and the trial court has discharged the jury. In other words, where (as here) a defendant raises an issue as to inconsistent verdicts after the verdicts have become final and the trial court has discharged the jury, the defendant's delay deprives the trial court of the opportunity to address any inconsistency in the verdicts. See Brightwell, 388 A.2d at 1066 ("By waiting until post-verdict motions to raise the issue, [the defendant] deprived the [trial] court of an opportunity to correct any error."); Rail, 2016 WL 736336, at *7 ("[H]ad [the defendant] raised the inconsistency before the jury was discharged, it would have been correctable." (Citations omitted)); Alfaro, 489 N.E.2d at 1281 ("[I]n jury cases[,] any claim that the verdict[s are] repugnant must be made before the jury is discharged. This permits the court to resubmit the matter to the jury to obtain [] consistent verdict[s.]" (Citations omitted)); Zweigart, 188 P.3d at 249 ("There was a procedure under which [the] defendant could have asked to have the jurors reconsider their verdicts, but [the] defendant did not attempt to use that procedure." (Citation and footnote omitted)).

Legally inconsistent verdicts are, more often than not, immediately recognizable.

- 41 -

Thus, it is entirely reasonable to expect a defendant to object to inconsistent verdicts before the verdicts are final and the trial court discharges the jury. Indeed, defendants in multiple cases have done so. See McNeal, 426 Md. at 460-61, 44 A.3d at 985 (After the jury's foreperson stated the verdicts, but before the courtroom clerk had the jury hearken to the verdicts, the defendant objected to the allegedly inconsistent verdicts and requested that the trial court send the jury back to resolve the alleged inconsistency.); Wallace v. State, 219 Md. App. 234, 250, 100 A.3d 1173, 1182 (2014) ("After the verdicts were read, [the defendant]'s counsel objected to the alleged[ly inconsistent] verdicts, and counsel for both [the defendant] and the State [] requested that the case be sent back to the jury to resolve the inconsistency." (Emphasis and footnote omitted)).

Price provides another example of obvious legally inconsistent verdicts. In Price, 405 Md. at 15, 949 A.2d at 622, a jury acquitted a defendant of being a felon in possession of a firearm, wearing, carrying, or transporting a handgun, and all of the drug trafficking crimes with which the defendant had been charged; yet, the jury convicted the defendant of possession of a firearm during and in relation to a drug trafficking crime under sufficient circumstances to constitute a nexus to the drug trafficking crime. A defense lawyer would not even need to know the facts of Price to realize that the conviction was legally inconsistent with the acquittals.

There are simple reasons why it is both feasible and desirable for a defendant to object to legally inconsistent verdicts before the verdicts become final and the trial court discharges a jury—as explained above, legally inconsistent verdicts are generally obvious when the jury's foreperson states them; moreover, with case law clarifying that an

- 42 -

objection is required before the verdicts become final and the jury is discharged, defense counsel will be on notice of the need to examine verdicts for legal inconsistencies and raise the issue. If defense counsel is unsure of whether verdicts are legally inconsistent, defense counsel may request a brief pause in the proceedings or recess, prior to the finality of the verdicts, during which defense counsel may evaluate the verdicts and arrive at a determination as to whether they are legally inconsistent. As such, trial courts should allow a brief pause in the proceedings or, if necessary, a recess to give defense counsel time to determine whether to lodge any objection as to legally inconsistent verdicts.

A defendant has not only an opportunity, but in some cases an incentive, to object to inconsistent verdicts before the verdicts become final. Where a guilty verdict is inconsistent with a not-guilty verdict, the defendant might raise such an issue with the expectation that the trial court will send the jury back to resolve the inconsistency, and in hopes that the jury may find the defendant not guilty of both charges. As Judge Harrell noted in Price, 405 Md. at 42, 949 A.2d at 638 (Harrell, J., concurring): "The jury is free to resolve the inconsistency either by returning verdict[s] in the defendant's favor, convicting on the implicated counts, or deadlocking on a charge so that no inconsistent finding results." Judge Harrell also observed:

> [Q]uite often[,] a defendant's optimal choice will be to remain silent, thus waiving his [or her] challenge to the inconsistent verdicts and accepting the conviction that may be inconsistent. A defendant, aware of his or her guilt, or the overwhelming evidence of guilt, of all of the crimes of which he or she stands charged, may choose to accept the jury's lenity. A defendant may be wise to accept the inconsistent conviction and accompanying sentence, rather than look a gift horse in the mouth. If the defendant objects to the inconsistent verdicts, the jury, given a second chance, may choose to remedy the error in a manner [that is] not in the defendant's favor.

Id. at 40 n.9, 949 A.2d at 637 n.9 (Harrell, J., concurring). Similarly, in Tate II, 182 Md. App. at 134, 957 A.2d at 651, the Court of Special Appeals stated that a defendant's asking the trial court to instruct the jury "[Y]ou can't have it both ways[; g]ive us two acquittals or give us two convictions" is the equivalent of the defendant's saying "roll the dice, double or nothing."

The choice of whether to object to inconsistent verdicts belongs to the defendant alone. See Price, 405 Md. at 41 n.10, 949 A.2d at 638 n.10 (Harrell, J., concurring) ("Because the rule against legally inconsistent verdicts is intended to protect the criminal defendant, the State may not object to the inconsistent verdicts. The option belongs only to the defendant."); Tate II, 182 Md. App. at 135, 957 A.2d at 652 ("When inconsistent verdicts are rendered, the [trial court] may not, *sua sponte*, send the jury back to resolve the inconsistency, because it is the defendant who is entitled, should he [or she] so wish, to accept the benefit of the inconsistent acquittal. By the same token, the prosecutor may not ask to have the jury sent back to resolve the inconsistency, because it is the defendant, once again, who is entitled, should he [or she] so wish, to accept the benefit of the inconsistent acquittal.").

Basic principles of equity require a defendant to object to inconsistent verdicts before the verdicts become final and the trial court discharges the jury. As the concurring opinion in Price noted, a "jury may render [] legally inconsistent verdict[s] to show lenity to [a] defendant. . . . [W]e should not permit the defendant to accept the jury's lenity in the trial court, only to seek a **windfall reversal on appeal** by arguing that the [] verdicts are

inconsistent." Price, 405 Md. at 40, 949 A.2d at 637 (Harrell, J., concurring) (emphasis added). And, as the Court of Special Appeals has put it, a defendant may not "**have his [or her] cake and eat it too**"; in other words,

> [t]he defendant may not stand mute and later complain about the verdicts [that] he [or she] **did nothing to cure** at the only time [that] a cure was still possible. . . . A defendant simply may not seek to **exploit an alleged inconsistency** without taking the necessary step to cure or resolve the inconsistency when it is still possible to do so.

Tate II, 182 Md. App. at 132, 135, 136, 957 A.2d at 650, 652 (emphasis added). Simply stated, it would be incongruent with the administration of justice to permit a defendant to acquiesce while a trial court accepts inconsistent verdicts—despite the circumstance that the inconsistent verdicts may be easily recognized—then raise the issue of the inconsistent verdicts later, when it is too late for the trial court to send the jury back to resolve the inconsistency. Stated otherwise, allowing a defendant to wait and raise the issue of an inconsistent verdict after the finality of the verdicts and the discharge of the jury leaves the trial court in a criminal case with no alternative remedy but to strike the legally inconsistent guilty verdict, even though the objection could have been raised earlier at a time when the trial court could have addressed the issue.

Our conclusion that an objection to legally inconsistent verdicts must be lodged before the verdicts become final and the jury has been discharged is completely consistent with the prohibition on double jeopardy of the Fifth Amendment to the United States

Constitution and Maryland common law,[22] and Maryland case law on the finality of verdicts. "The Double Jeopardy Clause prohibits unequivocally the retrial of a criminal defendant following a **final** judgment of acquittal." State v. Fennell, 431 Md. 500, 514, 66 A.3d 630, 639 (2013) (emphasis added) (citation omitted); see also Arizona v. Washington, 434 U.S. 497, 503 (1978) ("If the innocence of the [defendant] has been confirmed by a **final** judgment, the Constitution conclusively presumes that a second trial would be unfair." (Emphasis added)).

Under Maryland case law, a jury's verdict is final when the trial court accepts the verdict after the jury has hearkened to the verdict and/or been polled. See Smith, 299 Md. at 168, 472 A.2d at 993 ("Absent a demand for a poll, the verdict becomes final upon its acceptance[.]"). For the sake of clarity, we describe the typical manner in which verdicts are taken. The jury enters the courtroom, and the courtroom clerk asks: "Members of the jury, have you reached a verdict?" The jurors respond in unison: "Yes." The courtroom clerk asks: "Who will say for you?" The jurors respond in unison: "Our foreperson." The courtroom clerk asks the jury's foreperson to rise, and asks for the verdict as to each charge. In response to each charge, the jury's foreperson says "guilty" or "not guilty." At this time, typically, the trial court asks whether either party wants the jury to be polled. This would be the opportune time for the defendant to object to allegedly inconsistent verdicts.

---

[22] "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. "Since *Benton v. Maryland*, 395 U.S. 784[] (1969), the Double Jeopardy Clause of the Fifth Amendment is fully applicable to [S]tate criminal proceedings. The double jeopardy prohibition is also part of Maryland common law[.]" State v. Prue, 414 Md. 531, 540 n.2, 996 A.2d 367, 372 n.2 (2010) (citations omitted).

In any event, if a defendant does not object to allegedly inconsistent verdicts, and instead requests that the jury be polled, then, typically, the courtroom clerk repeats the verdicts as the jury's foreperson stated them. The courtroom clerk individually asks each juror something to the effect of: "You've heard the verdict of your foreperson; is your verdict the same?" Each juror responds. Next, the courtroom clerk hearkens the jury to the verdicts, stating something to the effect of: "Members of the jury, hearken to the verdict as the court has recorded it." The clerk then repeats each verdict and asks the jury: "So say you all?"

Where a poll reveals a lack of unanimity, this Court has expressly allowed a trial court in a criminal case to send a jury back to resolve a problem with the verdicts **after** the trial court polls the jury, but obviously before the verdicts become final and the trial court discharges the jury. Specifically, in <u>Smith</u>, a criminal case, this Court held that a trial court did not abuse its discretion in sending a jury back to resolve a problem with the verdicts— namely, that the verdicts were not unanimous, as revealed by a poll. See <u>Smith</u>, 299 Md. at 178-79, 472 A.2d at 998. This Court expressly concluded that the trial court's sending the jury back did not violate the prohibition on double jeopardy, as "[t]he verdicts of the jury as presented to the trial court did not reflect an actual agreement of the jury and did not represent a **final acquittal** on any of the charges." <u>Id.</u> at 179, 472 A.2d at 998 (emphasis added).

There is no violation of the prohibition on double jeopardy where, before the trial court accepts the verdicts, the defendant objects on the ground that a guilty verdict is legally inconsistent with a not-guilty verdict; and the trial court agrees with the defendant and

- 47 -

sends the jury back to resolve the inconsistency. Accord Price, 405 Md. at 42 n.11, 949 A.2d at 638 n.11 ("There is no double jeopardy consequence in permitting the trial court, upon the defendant's request, to re-instruct the jury and permit it to return to deliberations. . . . [T]he double jeopardy prohibition . . . prevents further deliberation on an acquittal only after that verdict is final." (Citations and internal quotation marks omitted)).

We would not want to adopt a rule permitting a defendant to object to allegedly inconsistent verdicts after the verdicts become final and the trial court discharges the jury, as such a rule would result in all allegedly legally inconsistent verdicts being stricken as a matter of course. As explained above, ideally, the objection should be made before the polling of the jury. If, however, the objection does not occur before the polling of the jury, then the objection must occur before the verdicts become final—*i.e.*, the objection must occur before the trial court's acceptance of the verdicts after the jury has been polled and/or hearkened. See Smith, 299 Md. at 168-69, 472 A.2d at 993; Santiago, 412 Md. at 38, 985 A.2d at 562. When confronted with an objection to allegedly inconsistent verdicts, the trial court should not be required to disregard the objection with the jury still present and not attempt to address the alleged inconsistency. Stated otherwise, a jury's verdict cannot be deemed to have been accepted by the trial court where the trial court is faced with an objection as to allegedly legally inconsistent verdicts before the verdicts are final and the jury is discharged.

As noted above in our discussion of cases from other jurisdictions, we are aware that, in Louberti, 895 So. 2d at 481, one of Florida's intermediate appellate courts, in a single paragraph with no citations, reasoned that an objection to legally inconsistent

- 48 -

verdicts before the trial court discharges the jury "would [] serve[] no purpose" because, "[o]nce the jury acquit[s a defendant] of [a charge], double jeopardy would [] preclude[] the jury from reconsidering" that charge. We decline to follow Louberti, as the opinion offers no meaningful analysis as to the significance of a trial court's acceptance of a verdict, or, for that matter, the prohibition on double jeopardy.

Similarly, we decline to follow the Illinois appellate court's holding in Ousley, 697 N.E.2d at 930, that legally inconsistent verdicts present plain error. Simply put, under Maryland case law, plain error review requires that all four of the Rich factors be satisfied before an appellate court may exercise plain error review. Indeed, in Rich, 415 Md. at 578, 3 A.3d at 1216-17, this Court unequivocally stated that plain error review requires the satisfaction of four prongs before the appellate court may resort to plain error review— namely, that there must be an error or defect that the defendant has not intentionally relinquished or abandoned, i.e., affirmatively waived; that the legal error must be clear or obvious, rather than subject to reasonable dispute; that the error must have affected the defendant's substantial rights, which, in the ordinary case, means that the defendant must demonstrate that the error affected the outcome of the trial court proceedings; and that, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error, and the appellate court should exercise that discretion only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

In Rich, 415 Md. at 574, 3 A.3d at 1214 (2010), this Court elaborated on the "discretion" prong of plain error review as follows: "The few cases where we have exercised our discretion to review unpreserved issues are cases where prejudicial error was

found and the failure to preserve the issue was not a matter of trial tactics." (Citation and internal quotation marks omitted). Similarly, in Conyers v. State, 345 Md. 525, 563, 693 A.2d 781, 799 (1997), this Court stated:

> [I]n the case of plain error, that is, error which vitally affects a defendant's right to a fair and impartial trial, we retain the discretion to provide appellate review, although the error was unobjected to. We have explained, however, that plain error review should only be undertaken when the error is compelling, extraordinary, exceptional or fundamental to assure the defendant of fair trial.

(Citations and internal quotation marks omitted). In short, under Rich, plain error review is unavailable where a defendant fails to object as a matter of trial tactics.

In this case, Givens has not requested plain error review, and has not argued that the failure to raise the issue before the verdicts became final and the circuit court discharged the jury was not a matter of trial tactics. Further, the error is neither clear nor obvious. It is mere speculation to posit that, in convicting Givens of felony murder, the jury erroneously intended to find conspiracy to commit robbery to be the requisite predicate offense. Givens did not object to the allegedly inconsistent verdicts while the jury was still present, and filed a motion to strike the convictions a little over an hour after the circuit court discharged the jury. If Givens had raised the issue of the allegedly inconsistent verdicts before the verdicts became final and the circuit court discharged the jury, the circuit court would have been able to send the jury back to resolve the alleged inconsistency. Under this scenario, Givens may have been convicted of a requisite predicate felony; thus, the existence of error is not clear and obvious. Although Givens has not sought plain error review and has not addressed any of the Rich factors—including

whether the failure to raise the issue before the verdicts became final and the circuit court discharged the jury was a matter of trial tactics—what is certain is that, in failing to raise the issue before the verdicts became final and the circuit court discharged the jury, Givens deprived the circuit court of an opportunity to have the jury resolve the alleged inconsistency and, thereby, avoided the possibility of being convicted of a requisite predicate felony. Under these circumstances, the error is not clear and obvious, and the four factors that are necessary for plain error review are not satisfied.

In contrast to Maryland, some States, such as Illinois, have a different standard for plain error review. In Illinois, under Ill. Comp. Stat. Ann., S. Ct. Rule 615(a), plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. See also People v. Clark, 50 N.E.3d 1120, 1133 (Ill. 2016) ("The plain error doctrine is applicable when: (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Citation and internal quotation marks omitted)). In Illinois, the plain error doctrine may apply even where the seriousness of the error is not significant. By contrast, in Maryland, the plain error doctrine may apply only if the four factors that are set forth in Rich are satisfied.

Our conclusion is in conformity with Dietz, 2016 WL 3189528, at *8, in which the Supreme Court remarked: "Given additional concerns in criminal cases, such as attachment

of the double jeopardy bar, we do not address here whether it would be appropriate to recall a jury after discharge in a criminal case." (Citation omitted). Obviously, by the time that a trial court discharges a jury that has acquitted a defendant, a trial court has accepted the acquittal, and thus has made the acquittal final. See Smith, 299 Md. at 168-69, 472 A.2d at 993. By that time, a double jeopardy concern would arise if the trial court recalled the jury. The holding in this case does not stand for the proposition that a trial court may discharge a jury that has acquitted a defendant of one charge and convicted the defendant of another charge, then later recall the jury to resolve an inconsistency between the acquittal and the conviction.

We disagree with Givens's contention that, in the scenario that we described above, the defendant is forced to "forfeit an acquittal." As explained above, the defendant is the only one who can choose to object to the inconsistent verdicts. When inconsistent verdicts are rendered, the trial court may not, *sua sponte*, send the jury back to resolve the inconsistency, because it is the defendant who is entitled, should he or she so wish, to accept the benefit of the inconsistent acquittal. By the same token, the prosecutor may not ask to have the jury sent back to resolve the inconsistency, because it is the defendant, once again, who is entitled, should he or she so wish, to accept the benefit of the inconsistent acquittal.

If the defendant chooses to object to the inconsistent verdicts, and the trial court sends the jury back to resolve the inconsistency, it is not a foregone conclusion that the jury will find the defendant guilty of both of the charges; to the contrary, the jury might acquit the defendant of both of the charges. See Price, 405 Md. at 42, 949 A.2d at 638

- 52 -

(Harrell, J., concurring) ("The jury is free to resolve the inconsistency [] by returning verdict in the defendant's favor[.]"); Tate II, 182 Md. App. at 134, 957 A.2d at 651 ("The obvious cure for an inconsistency in verdicts would be to send the jury back to resolve the inconsistency: 'Ladies and gentlemen of the jury, you can't have it both ways. Give us two acquittals or give us two convictions.'").

Givens is also mistaken in asserting that the following language from Taha, 378 Md. at 492, 836 A.2d at 645, undermines our holding in this case: "In the absence of a rule requiring trial [court]s to resolve verdict inconsistencies prior to the release of the jury, the parties in Maryland courts should not be precluded from the raising the issue of irreconcilably inconsistent verdicts by post-judgment motion." (Footnote omitted). In a footnote that followed this sentence, this Court stated:

> The dissent would advocate not reaching the central issue in this case, the very reason why we issued a writ of certiorari, because [the defendant employer] did not voice a timely objection at trial. As we have stated, however, this Court has discretion to consider issues that were not preserved." *Fisher v. State*, 367 Md. 218, 238, 786 A.2d 706, 718 (2001) (discussing Maryland Rule 8-131). Following the denial of its timely post-judgment motion, [the defendant employer] appealed the issue of irreconcilably inconsistent verdicts twice, and this Court twice issued a writ of certiorari to resolve the matter. Had the issue of irreconcilably inconsistent verdicts been waived, and it has not, we would have exercised our discretion in this case to resolve this important question of public policy and to provide guidance to the trial courts.

Id. at 492 n.10, 836 A.2d at 645 n.10. In other words, in Taha, this Court expressly emphasized that, under the circumstances of that case, this Court would have exercised discretion to reach the issue of inconsistency even if the issue were not preserved. As this Court noted in Taha, "there remains a distinction between inconsistent verdicts in criminal

cases and *irreconcilably inconsistent jury verdicts* in civil matters." Taha, id. at 488, 836 A.2d at 642 (emphasis in original) (footnote omitted). In Taha, this Court declined to conclude that the party that challenged the inconsistent verdicts waived the issue as to the inconsistent verdicts by failing to object, because, "**[b]ased on the circumstances in th[at] case**, it [wa]s procedurally fair to address the merits of [the party]'s contentions[.]" Id. at 492, 836 A.2d at 645 (emphasis added) (internal quotation marks omitted). The circumstances to which this Court referred included that the judgment in the plaintiff's favor was "based on woefully insufficient evidence and at odds with the jury's other legal conclusions." Id. at 492, 836 A.2d at 645 (citation omitted). It is evident that this Court's remark in Taha that parties in civil cases should not be precluded from addressing legally inconsistent verdicts in "post-judgment motions" was not intended to mean that, in criminal cases, defendants must be permitted to challenge legally inconsistent verdicts after the finality of the verdicts and the discharge of the jury.

We also disagree with Givens's contention that, in Price, 405 Md. 10, 949 A.2d 619, the circumstance that a majority of the Court did not adopt Judge Harrell's concurring opinion is of significance. As discussed above, no issue as to preservation or waiver was before this Court in Price; and no question was presented in a petition for a writ of *certiorari* in Price concerning preservation or waiver. Stated otherwise, in Price, this Court answered the questions that were put to it. "[I]issues '[that] merely lurk in the record . . . are not to be considered as having been so decided as to constitute precedents[.]'" State v. Rice, ___ Md. ___, ___ A.3d ___, No. 96, Sept. Term 2015, 2016 WL 2941118, at *9 n.5 (Md. May 20, 2016) (quoting Webster v. Fall, 266 U.S. 507, 511 (1925)) (ellipsis in

- 54 -

original).[23]

Although no issue as to preservation or waiver was before this Court in Price, Judge Harrell elected to address waiver for the express purpose of providing guidance to parties and courts. See Price, 405 Md. at 35, 949 A.2d at 634 (Harrell, J., concurring) ("I write separately . . . to encourage clarification of the scope of today's holding and the proper procedure to be followed by a defendant . . . and a trial [court] in order to fashion relief from [] inconsistent verdict[s], thereby giving guidance and possibly sparing our appellate courts unnecessary appeals."). As the Court of Special Appeals observed in Tate II, 182 Md. App. at 129, 957 A.2d at 648-49, Judge Harrell's concurring opinion in Price "clarifies several vitally important issues that the majority opinion leaves in the dark and that could lead the unwary astray." (Footnote omitted). And, in multiple cases after Tate II, the Court of Special Appeals adopted Part C of Judge Harrell's concurring opinion in Price and concluded that, to preserve for review any issue as to allegedly inconsistent verdicts, a defendant in a criminal trial by jury must object to the allegedly inconsistent verdicts before the verdicts become final and the trial court discharges the jury. See Hicks, 189 Md. App. at 129, 984 A.2d at 256; Martin, 218 Md. App. at 40, 96 A.3d at 788; Henson v. State, 212 Md. App. 314, 323, 69 A.3d 26, 32, cert. denied, 434 Md. 314, 75 A.3d 319 (2013) (The defendant "failed to preserve his point for review by objecting prior to the jury's

---

[23]In Rice, 2016 WL 2941118, at *9 n.5, we inferred that, in one of this Court's prior opinions, this Court concluded that an appeal was properly before this Court; although this Court did not expressly indicate as much in the prior opinion, "a question as to our jurisdiction to hear an appeal is hardly one that 'lurks in the record' when the State squarely addresses the issue in its brief."

discharge[.]"  (Citing McNeal, 426 Md. at 466, 44 A.3d at 989; Price, 405 Md. at 40, 949 A.2d at 637 (Harrell, J., concurring)).

In sum, we now join the Court of Special Appeals, adopt Part C of Judge Harrell's concurring opinion in Price, and hold that, to preserve for review any issue as to allegedly inconsistent verdicts, a defendant in a criminal trial by jury must object to the allegedly inconsistent verdicts before the verdicts are final and the trial court discharges the jury.

Applying our conclusion to this case's facts, we conclude that Givens waived any issue as to allegedly inconsistent verdicts by failing to object before the verdicts became final and the circuit court discharged the jury.  Indeed, the record reveals that Givens had ample opportunity to object before the verdicts became final and the jury was discharged.  Immediately after the jury's foreperson stated the verdicts, the circuit court asked whether there were any requests.  Givens's counsel's only response was to ask that the jury be polled.  The courtroom clerk repeated the verdicts exactly as the jury's foreperson had stated them.  The courtroom clerk polled the jury by asking the jury's foreperson "Is this your verdict?" and asking each other juror "[I]s [the foreperson]'s verdict your verdict?"  Each of the twelve jurors separately responded affirmatively.  The courtroom clerk properly hearkened the verdict, stating: "Ladies and gentlemen of the jury, h[e]arken to your verdict as the Court has recorded it."  The courtroom clerk repeated the verdicts again, then asked: "So say you all?"  The jurors responded "Yes."  The circuit court thanked and discharged the jury.  Immediately afterward, the circuit court, the prosecutor, and Givens's counsel discussed matters that were related to the sentencing proceeding, and the circuit court adjourned.

Givens was convicted of the first-degree felony murder, and conspiracy to commit robbery with a dangerous weapon and conspiracy to commit robbery of each of the six victims. It would have been apparent that Givens had been convicted of first-degree felony murder, but had not been convicted of an underlying felony. Yet, it was not until after the jury was discharged that Givens filed the motion to strike in the circuit court. By that time, with the jury discharged and the circuit court adjourned, it was too late for the circuit court to send the jury back to resolve the inconsistency in the verdicts—assuming that the circuit court agreed with Givens that there was an inconsistency in the verdicts.

By filing the motion to strike after the verdicts became final and the circuit court discharged the jury, Givens deprived the circuit court of the opportunity to resolve any inconsistency in the verdicts. In doing so, the purpose of the preservation requirement—to give a trial court the opportunity to correct any error in the proceedings—was thwarted. See Peterson, 444 Md. at 126, 118 A.3d at 937 ("Fairness and the orderly administration of justice [are] advanced by requiring [defense] counsel to bring the position of their client to the attention of the [trial] court at the trial so that the trial court can pass upon, and possibly correct[,] any errors in the proceedings." (Citation and internal quotation marks omitted)). Simply stated, Givens's post-trial motion to strike was too late.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

IN THE COURT OF APPEALS
OF MARYLAND

No. 88
September Term, 2015

DOMINIC GIVENS

v.

STATE OF MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A. (Retired, Specially
Assigned),

JJ.

Dissenting Opinion by Greene, J.
which Adkins and Battaglia, JJ., join.

Filed:  August 22, 2016

I respectfully dissent.

The long standing rule has been that generally a jury verdict defective in form or substance should not be accepted by the trial judge. *Heinze v. State*, 184 Md. 613, 617, 42 A.2d 128, 130 (1945). In *Heinze*, this Court explained the policy behind the rule:

> It is essential for the prompt and efficient administration of justice to prevent defective verdicts from being entered upon the records of the court as well as to ascertain the real intention of the jury in their finding. Where a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation.

184 Md. at 617−18, 42 A.2d at 130 (see cases cited therein).

I accept the majority's premise that Mr. Givens did not object in a timely fashion to challenge the inconsistent jury verdicts. Thus, he did not properly preserve for appellate review the issue of inconsistent verdicts. Although, Mr. Givens' counsel could have brought his concerns to the trial judge's attention before the discharge of the jury, the trial judge should have been aware of the nature of the inconsistent verdicts and instructed the jury that it could not return inconsistent verdicts. *See Galloway v. State*, 371 Md. 379, 407−08, 809 A.2d 653, 670 (2002). *See also Price v. State*, 405 Md. 10, 21, 949 A.2d 619, 626 (2008). In addition, the court could have refused to accept the inconsistent verdicts and directed the jury to deliberate further in order for the jury to decide whether to enter either two not guilty verdicts or two guilty verdicts with respect to the felony murder count and the underlying predicate felony count(s). *See Heinze*, 184 Md. at 617, 42 A.2d at 130.

In this appeal, we should not be overly concerned about the lack of preservation. Instead, we should reach the merits of his appeal either on the basis of the "plain error" doctrine or the exercise of our discretion and the obvious prejudice to the defendant. *See* Md. Rules 4-325(e) and 8-131(a). It is important to note that before the imposition of the sentence in this case, defense counsel filed a motion to strike the felony murder verdict approximately one hour after the jury had been discharged on the grounds that the felony murder verdict was inconsistent with the not guilty verdicts. That motion was denied and the trial judge sentenced the defendant to life, for felony murder, and twenty years consecutive, to the life sentence, for conspiracy to commit robbery. The remaining counts were merged.

Although the defendant's motion to strike the felony murder verdict was not filed before the court discharged the jury, it was filed in sufficient time for the trial judge to take action prior to the imposition of the sentence. In my view, the trial judge, like the appellate court, has the authority to strike or set aside an invalid felony murder verdict or conviction.

We declared in *Price*, 405 Md. at 29, 949 A.2d at 630, that "inconsistent verdicts shall no longer be allowed." Indeed, this was a sea change with respect to inconsistent verdicts in criminal cases. This was more than an aspirational statement from the Court, it was a clear declaration of the law of Maryland going forward. The focus of the majority opinion in *Price* was the intolerable nature of inconsistent verdicts, and notably because they were not allowed in civil cases, it would be a travesty to continue to allow inconsistent verdicts in criminal cases. *See Price*, 405 Md. at 22, 949 A.2d at 625. The majority, in *Price*, did not discuss how Mr. Price preserved his challenge to the inconsistent verdicts or

3

what others must do in order to challenge an inconsistent verdict. Today, the majority, in this case, adopts Judge Harrell's concurring opinion in *Price* as the standard for preservation: "[T]o preserve the issue of legally inconsistent verdicts for appellate review, a defendant in a criminal trial by jury must object or make known any opposition to the allegedly inconsistent verdicts before the verdicts become final and the trial court discharges the jury." Maj. Slip Op. at 2.

In *McNeal v. State*, 426 Md. 455, 462, 44 A.3d 982, 986 (2012), we adopted part of Judge Harrell's concurring opinion in *Price* and held that legally inconsistent verdicts, as opposed to "factually" inconsistent verdicts, will not be tolerated. We did not adopt at that time Judge Harrell's position, as reflected in his concurring opinion in *Price,* that a timely challenge by the defendant to an inconsistent verdict must be made before the verdict becomes final and the jury is discharged. *See McNeal*, 426 Md. at 466, 44 A.3d at 989.

In comparing criminal jury trials to civil jury trials, in *Price*, we discussed our opinion in *Galloway*:

> The consistency requirements in criminal cases should not be less stringent than the standards we have applied in civil cases, and that we are unwilling to afford less protection to the jury trial rights of a criminal defendant, whose very liberty, or even his or her life, is at stake, than to a civil litigant, where, generally, it is money that is at stake.

*Price*, 405 Md. at 27, 949 A.2d at 629 (internal quotation marks omitted).

In *Price*, as a matter of judicial policy, we were also persuaded by the reasoning of several State Supreme Courts which had refused to permit inconsistent jury verdicts in criminal cases. 405 Md. at 27–29, 949 A.2d at 629–30. In *DeSacia v. State*, 469 P.2d 369, 377 (Alaska 1970), the Supreme Court of Alaska stated that there is

4

no basis to assume . . . that inconsistent verdicts are the product of a jury's disposition toward treating the accused leniently; nor can we see a basis for assuming that, in allowing inconsistent jury verdicts in criminal trials to stand, we run only "the risk that an occasional conviction may have been the result of compromise." The truth is simply that we do not know, nor do we have any way of telling how many inconsistent verdicts are attributable to feelings of leniency, to compromise, or, for that matter, to outright confusion on the part of the jury.

We noted that the Supreme Court of Florida pointed out that "the possibility of a wrongful conviction . . . outweighs the rationale for allowing inconsistent verdicts to stand." *Brown v. State*, 959 So.2d 218, 222 (Fla. 2007). The Court of Appeals of New York concluded that "a conviction will be reversed [] in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered." *People v. Tucker*, 431 N.E.2d 617, 619 (N.Y. 1981).

It would be, in my view, an injustice to allow the conviction for felony murder to stand. Under the felony murder doctrine, a verdict of guilty on the underlying felony is an essential ingredient of the murder conviction. *See Newton v. State*, 280 Md. 260, 269, 373 A.2d 262, 267 (1977). Even assuming the sufficiency of the evidence to convict for felony murder, here, the jury returned a verdict of not guilty as to any of the possible predicate offenses, namely, robbery, attempted robbery, and use of a handgun. Instead, the jury returned a verdict of guilty to a related misdemeanor offense of conspiracy to commit robbery. A verdict of guilty for conspiracy to commit robbery does not and cannot support a conviction for felony murder. Clearly, the verdicts entered and the subsequent

convictions in this case did not result in a windfall to the defendant. Any windfall favored only the prosecution.

The verdict of guilty of felony murder was invalid the moment the jury announced it in open court. Such a verdict of guilty, under the circumstances, based upon no predicate felony offense or an improper predicate offense cannot stand and does not support a rational conclusion that the jury exercised leniency toward the defendant. The verdict of felony murder appears to rest upon the jury's erroneous belief that it could find Mr. Givens guilty of felony murder on the basis of a conspiracy to commit robbery. Thus, because Mr. Givens agreed to be involved in the events that led to the victim's death, the jury must have blamed him for the victim's death. Under the circumstances, the inconsistent verdict of guilty for felony murder is wrong.

Appellate courts may "exercise [their] discretion to review unpreserved issues . . . where prejudicial error was found and failure to preserve the issue was not a matter of trial tactics." *State v. Rich*, 415 Md. 567, 574, 3 A.3d 1210, 1214 (2010) (quoting *Conyers v. State*, 354 Md. 132, 150, 729 A.2d 910, 919 (1999)). The majority opinion dismisses the application of the plain error doctrine to the facts of this case believing that its application "requires more than the mere circumstance that an issue pertains to substantial rights." Maj. Slip Op. at 36. I respectfully dissent from this conclusion. Even though appellate review under the plain error doctrine is rare, its application is justified under the facts of this case. At this stage of the process, only an appellate court can remedy the obvious and serious error in this case. Accordingly, I would apply the four prongs of plain-error review and conclude that the error "seriously affect[s] the fairness, integrity [and] public reputation

6

of [the] judicial proceedings." *Rich*, 415 Md. at 578, 3 A.3d at 1216 (citations omitted). Moreover, I agree with the position of the appellate court in *People v. Ousley*, 697 N.E.2d 926, 930 (Ill. App. Ct. 1998) when it stated, in an analogous case, that the "defendant's failure to raise the issue of the jury's legally inconsistent verdicts at trial or in a post-trial motion does not result in a waiver of that issue because legally inconsistent verdicts present plain error, the exception to the rule of waiver."

As a result of our opinion in *Price*, legally inconsistent verdicts are no longer tolerated. Because of our decision in *McNeal*, factually inconsistent verdicts in criminal cases are tolerated. To obtain a felony murder conviction, a verdict of guilty on the underlying felony is an essential ingredient of the crime of felony murder. A misdemeanor cannot be a substitute for the underlying felony under the felony murder doctrine. Second, the jury's legal error in rendering inconsistent verdicts of guilty of felony murder and not guilty as to any of the predicate offenses is obvious and not subject to any reasonable dispute. Third, the error affected Mr. Givens' substantial right to a fair trial based upon the law and the facts. In other words, the verdict and ultimate invalid conviction of felony-murder affected the outcome of the court proceedings. Lastly, this Court has the discretion to remedy the error—discretion which ought to exercised—because the results "seriously affect[s] the fairness, integrity or public reputation of [the] judicial proceedings." *Rich*, 415 at 578, 3 A.3d at 1216 (citations omitted).

As stated previously, generally, if the jury returns a verdict that is defective in form or substance, the trial judge should not accept it. *See Heinze*, 184 Md. at 617, 42 A.2d at

7

Thus, our case law provides that the trial judge has a duty to remedy the problem with regard to inconsistent verdicts.

In the present case defense counsel did not bring the matter of the inconsistent verdicts to the attention of the trial judge until after the jury was discharged. The trial judge could have addressed the matter *sua sponte* before discharging the jury, but did not. Nonetheless, the issue was raised below and decided by the trial court when it denied defense counsel's motion to strike the felony murder guilty verdict. It seems to me that where the record shows plain error and prejudice to the defendant and the issue was raised below, we should review the court's acceptance of the legally inconsistent verdict, even if the issue was not raised timely. Accordingly, on the merits, I would hold that the trial court abused its discretion when it denied Mr. Givens' motion to strike the felony murder conviction. Thus, I would reverse the judgment of the Court of Special Appeals.

I respectfully dissent. Judges Adkins and Battaglia authorize me to state that they join this dissenting opinion.